Krishna Reddy
10650 Mountain View Ave, #702
Redlands, CA 92373-8459
(909) 799-9569
No FAX Number

Plaintiff, KRISHNA REDDY,
in pro se,

# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

CASE NO.:   06-CV-2114-JDB

| | |
|---|---|
| KRISHNA REDDY, <br><br> Plaintiff, <br><br> vs. <br><br> SANDRA DAY O'CONNOR, et.al., <br><br> Defendants. | **OBJECTIONS TO HEARING OF ANY MATTER BY JUDGE; AND MOTION FOR DISQUALIFICATION OF THE HONORABLE JUDGE JOHN D. BATES** <br><br> [Art.2, Sec.2 of the US Constitution & Art.3, Sec.1 of the US Constitution] <br><br> [28 USCS 144 & 455] <br><br> [FRCP Rule 60(b)(6)] <br><br> Memorandum of Points and Authorities; Declaration of Plaintiff; Evidence Package;  and Proposed order |

**RECEIVED**

MAR 2 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

## OBJECTIONS TO THE HEARING OF ANY MATTER BY JUDGE; AND
## MOTION FOR DISQUALIFICATION OF
## THE HONORABLE JUDGE JOHN D. BATES

These are objections to hearing of any matter by the non-Article III Judge, the Honorable Judge JOHN D. BATES, and also MOTION for an order disqualifying the Honorable Judge JOHN D. BATES pursuant to 28 USC Sections 144 & 455.

These objections and MOTION are based on the attached memorandum of points and authorities, my supporting declaration, and on the evidence package that is concurrently being submitted to the Court, and all other documents on file and such other evidence as may be presented to the Court at or before the hearing.

Date: March 23, 2007

Krishna Reddy

_____

Krishna Reddy
Plaintiff, pro se

2

## MEMORANDUM OF POINTS AND AUTHORITIES
## STATEMENT OF RELEVANT FACTS

I. JUDGE JOHN D. BATES IS NOT AN ARTICLE III JUDGE:

    1. During the Presidential election in the year 2000, knowing that the former Vice President AL GORE was about to win the electoral votes of the State of Florida and thus the Presidency of the United States, four of the five USSC defendants to this case, the Associate Justices SANDRA DAY O'CONNOR, ANTHONY KENNEDY, CLARENCE THOMAS, and ANTONIN SCALIA, conspired to steal the Presidency for GEORGE W. BUSH ("BUSH"). They stipulated in the case of *Bush v. Gore,* 121 S.Ct. 525, 529 (2000), that there were 110,000 votes that were not counted, and yet stopped the recounts in Florida. As a result, all the Presidential electoral votes of Florida got disqualified pursuant to the Apportionment clause of the Fourteenth Amendment to the United States Constitution. In addition, RICHARD CHENEY ("CHENEY") did not have a State Citizenship prior to being seated as the Vice President since he allegedly moved to the State of Wyoming in July of 2000, and thus did not have the State Citizenship of Wyoming to be eligible for the Vice Presidency of the United States. Texas Presidential electors for not being able to vote for at least one qualified candidate who is not a resident of their own State and voting for the only qualified candidate BUSH who was a resident of their own State, got their electoral votes automatically disqualified. All the Presidential electors of BUSH and CHENEY got disqualified by voting for CHENEY who was not qualified to run for Vice Presidency since he did not have the mandatory State Citizenship of any State.

    2. Once I filed my Complaint about the above issues in the District Court of California [please see Exhibit 1 in the Evidence Package at pages 1-38, a Complaint that I filed on October 31, 2002, regarding Article II issues], my Complaint was dismissed for "lack of standing", but not before the Court made a finding to the effect that BUSH and CHENEY were named the winners of the 2000 Presidential

and Vice Presidential Election "despite failing to garner as many individual votes as their opponents..." [see Exhibit 2 at pages 39-43].

3. Once the wrong person, a non-Article II person, was seated as the President, in December 2001, BUSH appointed Judge JOHN D. BATES as the District Court Judge for the District of Columbia.

4. For the second Presidential election in the year 2004, CHENEY still did not have any State's Citizenship as he was living on the Federal land of Washington, D.C., after being seated as the Vice President, and the State of Wyoming could not "save" any State Citizenship for him, since he never completed the State residency requirements of the State of Wyoming. Thus, the second time around, BUSH still did not qualify to be the President of the United States and continued to be a non-Article II person seated as the "surrogate President."

5. On September 29, 2005, the non-Article II President, BUSH, appointed defendant JOHN G. ROBERTS as the Chief Justice of the Supreme Court.

6. In February 2006, Judge JOHN D. BATES was appointed by Justice JOHN G. ROBERTS to serve as a Judge of the FISA Court.

Based on the above, neither Judge JOHN D. BATES nor Justice JOHN G. ROBERTS, or any other Judge/Justice appointed by the non-Article II President, BUSH, is an Article III Judge, but is an Article II Judge similar to the Administrative Law Judges of the Executive Departments, or similar to the magistrate judges who are not Article III Judges either, and is not qualified to hear any matter in my Article III case in which I am seeking an injunction too against the USSC defendants, among others.

II. JUDGE JOHN D. BATES HAS CLOSE PERSONAL RELATIONSHIP WITH DEFENDANT JOHN G. ROBERTS:

As stated above, in February of 2006, Justice JOHN G. ROBERTS appointed Judge JOHN D. BATES to serve as a Judge of the FISA Court. An employer-employee relationship thus exists between Judge BATES and Justice ROBERTS.

III. JUDGE JOHN D. BATES IS BIASED AGAINST ME AND IN FAVOR OF THE USSC DEFENDANTS:

As mentioned in my OPPOSITION to USSC defendants' MOTION TO DISMISS, Judge BATES had the complaint "served" on the DOJ, gave DOJ the points to plead, and "invited" DOJ to plead a motion to dismiss! Once they filed a belated MOTION TO DISMISS, I was not even given the required 11 days to file my opposition, but my time was cut-short to less than a week after receipt of the MOTION, while other litigants in this Court were given more than 30 days to respond to MOTIONS TO DISMISS!

IV. I HAVE STANDING TO QUESTION QUALIFICATIONS OF BUSH:

Since I have the right to be heard by an Article III Judge in this action, I have the standing now to question the Article III qualifications of Judge JOHN D. BATES and to question the required Article II qualifications of BUSH thereof to be seated as the President of the United States [see Exhibit 1 at pages 6-31].

V. MOTION FOR DISQUALIFICATION OF JUDGE BATES IS PROPER:

A suggestion for disqualification of Judge BATES was made by me in my opposition to USSC defendants' motion to dismiss and my cross-motion for judgment on the pleadings. Therefore, this motion for disqualification is proper at this time.

Based on all the above, these objections to hearing of matters by Judge BATES and disqualification of Judge BATES (and all other BUSH-appointed Judges of this Court and the related Federal Appellate Court as well as all the BUSH-appointed Justices of the United States Supreme Court) are proper at this time.

## ARGUMENT

### SECTION I

### OBJECTIONS TO HEARING OF MATTERS BY JUDGE BATES

#### I

1. Federal litigant has personal right, subject to exceptions in certain classes of cases, to demand <u>Article III adjudication</u> of civil suit under USCA Const. Art. 3, Section 1 [see *Mark I, Inc. v. Gruber* (1994, CA7 Ill) 38 F3d 369; and *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.* (9th Cir. 1984) 725 F 2d 537, 546].

2. The qualifications of the persons who may choose or be chosen, are defined and fixed in the Constitution, and are unalterable by the Legislature, are not waivable [see *"Hinds' Precedents of the House of Representatives* (Washington: 1907)"*, Volume I, Chapter XIII, Section 435], and must be met [see *The Federalist Papers*, No. 60, by Alexander Hamilton]. Pursuant to Article II of the United States Constitution, only an Article II President can appoint an Article III District Court Judge pursuant to Section 2 of Article II of the United States Constitution. Since BUSH was and still is not an Article II President for both of his terms, and is a "surrogate President" [see Exhibit 1 at pages 6-31], Judge BATES is not an Article III Judge.

3. A non-Article III judge similar to the non-Article III magistrate judges, lacks jurisdiction to conduct jury trial without parties' consent and cannot exercise judicial functions over party's objections. See *Gomez v. United States* (1989) 490 US 858; 109 S Ct 2237; and *United States v. Colacurcio* (9th Cir. 1996) 84 F 3d 326, 332.

4. Federal non-Article III judges like a magistrate judge are not permitted to hear motions for injunctive relief without the consent of the parties [see *EEOC v. Local 638* (1996, CA2 NY) 81 F 3d 1162].

6

5. The Court has no authority to impose on the parties without their consent, a "surrogate judge" to try the controversy and determine liability *[In re Bituminous Coal Operators Ass'n, Inc.* (DC Cir. 1991) 949 F2d 1165, 1168-1169]. Referring fundamental issues of liability to a non-Article III judge for adjudication, over objection, is impermissible [see *Stauble v. Warrob, Inc.* (1992, CA1 Mass) 977 F2d 690].

6. Losing parties could wait until after the verdict to raise objections to hearing matters by a non-Article III judge [see *Reiter v. Honeywell, Inc.* (8th Cir. 1997) 104 F3d 1071, 1074].

As explained above, based on the fact that Judge BATES is not an Article III judge as was appointed by a non-Article II surrogate President, I am entitled to object to hearing of any matter by Judge BATES in this case.

## SECTION II

## DISQUALIFICATION OF JUDGE JOHN D. BATES IS PROPER PURSUANT TO 28 USC SECTIONS 144 & 455

1. Judges have an ethical duty to evaluate their own bias. Recusal is required if a reasonable factual basis exists to suspect bias. See 28 USCS 455(a). If the judge fails to disqualify himself or herself, any party may file a motion (or "suggestion") for disqualification under Section 455 [see *In re Bernard* (9th Cir. 1994) 31 F 3d 842, 843, fn. 1, 847 - held, "though section 455 is stated in terms of a self-enforcing obligation upon the judge, it may be invoked by a party]. Disqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. The inquiry is objective, from the point of view of a reasonable person with access to all of the facts [see *New York City Housing Develop. Corp. v. Hart* (7th Cir. 1986) 796 F 2d 976, 980]. The test is whether an average, reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality [*In re Faulkner* (5th Cir. 1988) 856 F2d 716, 720].

7

2. In the case of *Nateman v. Greenbaum* (Fla App. 1991) 582 So. 2d 643, Justice Baskin had dissented saying - the petitioner had "stepped into the ring against an opponent but was felled by the referee...." Where a judge becomes, or reasonably appears to have become personally involved in a dispute that is pending before her/him, or where she/he has, by her/his own action, injected additional facts into the record, due process may be offended, disqualification may be appropriate, a fair trial may be denied [see *In re Evans*, 411 A. 2d 984 (D.C. 1980)]. In this case, I am going through a similar situation, where Judge BATES has been participating in this case as an advocate and not as a Judge, and I am being compelled to face a biased judge in protecting my claims against the defendants. Therefore, disqualification is proper pursuant to 28 USCS 144 & 455(b)(1) and (b)(5)(ii).

3. Prior employment with the party presents sufficient risk that Judge's impartiality "might reasonably be questioned" and disqualification was required [see *Preston v. United States* (9th Cir. 1991) 923 F2d 731, 734; and see *United States v. Arnpriester* (9th Cir. 1994) 37 F3d 466, 467]. Judge BATES was reportedly appointed by defendant Justice ROBERTS to serve on the FICA Court. Therefore, disqualification of Judge BATES is proper.

Based on all the above, disqualification of Judge BATES is proper pursuant to 28 USC Sections 144 & 455.

## SECTION III

## VACATUR OF ALL PRIOR RULINGS IS PROPER PURSUANT TO FRCP RULE 60(b)(6)

Vacatur was a proper remedy for 28 USC Section 455(a) violation in the circumstances of the case pursuant to Federal Rules of Civil Procedure, Rule 60(b)(6) [see *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 862-870 (1988)].

Based on the above, all prior rulings, orders, and judgments made by the Honorable Judge JOHN D. BATES in the above-titled case should be vacated.

## CONCLUSION

Based on all the above, I request the District Court to kindly vacate the reference of the case for all purposes to the Honorable Judge JOHN D. BATES. I request the Court to kindly vacate all prior rulings, orders, and judgments made by the Honorable Judge JOHN D. BATES in this case. I request the Court to assign this case to an Article III judge who is not appointed by the non-Article II surrogate President, Mr. George W. Bush, during any of his terms.


Respectfully submitted,

Dated: March 23, 2007

Krishna Reddy

_____
Krishna Reddy
Plaintiff, in pro per

9

## DECLARATION OF PLAINTIFF, KRISHNA REDDY

I, Krishna Reddy, declare:

1. I am the plaintiff in the above-titled action.

2. The MOTION FOR DISQUALIFICATION OF JUDGE JOHN D. BATES is being made in good faith pursuant to 28 USC Sections 144 and 455.

3. Judge BATES has been appointed by the defendant Chief Justice JOHN G. ROBERTS to serve on the FICA Court; therefore, an employer-employee relationship exists between defendant Justice ROBERTS and Judge BATES. In this case, Judge BATES had the complaint "served" on the DOJ without issuing Summons, gave DOJ the points to plead, and "invited" DOJ to plead a motion to dismiss! Once they filed a belated MOTION TO DISMISS, I was not even given the required 11 days to file my opposition, but my time was cut-short to less than a week after receipt of the MOTION, while Judge BATES gave other litigants more than 30 days to respond to MOTIONS TO DISMISS! Therefore, it is my belief that Judge BATES has bias/prejudice against me and in favor of the defendants, the Supreme Court justices, and is unable to make an unbiased decision in this action.

4. These objections and motion for disqualification are being personally prepared by me and all facts stated in these objections and motion, including this declaration, the memorandum of points and authorities in support thereof, and all the documents submitted as exhibits, are all within my personal knowledge, except where otherwise indicated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 23rd day of March, 2007, at Redlands, California.

Krishna Reddy
Krishna Reddy
Plaintiff, pro se

10

Krishna Reddy
10650 Mountain View Ave, #702
Redlands, CA 92373-8459
(909) 799-9569
No FAX Number

Plaintiff, KRISHNA REDDY,
in pro se,

# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

CASE NO.:   06-CV-2114-JDB

| | |
|---|---|
| KRISHNA REDDY,<br><br>    Plaintiff,<br><br>    vs.<br><br>SANDRA DAY O'CONNOR, et.al.,<br><br>    Defendants. | **EVIDENCE PACKAGE IN SUPPORT OF OBJECTIONS TO THE HEARING OF ANY MATTER BY JUDGE; AND MOTION FOR DISQUALIFICATION OF THE HONORABLE JUDGE JOHN D. BATES** |

**RECEIVED**

MAR 2 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# EVIDENCE PACKAGE IN SUPPORT OF
# OBJECTIONS TO THE HEARING OF ANY MATTER BY JUDGE; AND
# MOTION FOR DISQUALIFICATION OF
# THE HONORABLE JUDGE JOHN D. BATES

Exhibit 1:    Copy of a Complaint filed in the Central District Court of California

Exhibit 2:    Order of Dismissal of Complaint

1 | Krishna Reddy
2 | 10650 Mountain View Ave, #702
  | Redlands, CA 92373-8459
3 | (909) 799-9569
  | No FAX Number

4

5 | Plaintiff KRISHNA REDDY,
  | in pro se

6

7

8 | **THE UNITED STATES DISTRICT COURT**

9 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10 | EDCV 02- 1187 RT (SGLx)

11

12 | KRISHNA REDDY,                                CASE NO.:

13 |              Plaintiff,

14 |              vs.                              [THREE-JUDGE COURT]

15 | THE STATE OF FLORIDA; THE STATE              COMPLAINT FOR
   | OF TEXAS; THE REPUBLICAN PARTY              DECLARATORY AND
16 | and its agents; GEORGE W. BUSH, Jr.,        INJUNCTIVE RELIEF FOR
   | President of the United States; RICHARD B.  UNCONSTITUTIONAL
17 | CHENEY, Vice President of the United         GOVERNMENTAL ACTIONS
   | States; JAMES A. BAKER, III; KARL           AND NONGOVERNMENTAL
18 | ROVE; ANDREW H. CARD, Jr.; KAREN            ACTIONS UNDER COLOR OF
   | HUGHES; JOHN ASHCROFT, United               LAW
19 | States Attorney General; WILLIAM HUBBS
   | REHNQUIST, Chief Justice of the United
20 | States Supreme Court; SANDRA DAY
   | O'CONNOR, Associate Justice; ANTONIN
21 | SCALIA, Associate Justice; CLARENCE
   | THOMAS, Associate Justice; ANTHONY
22 | M. KENNEDY, Associate Justice;
   | THE ELECTIONS CANVASSING
23 | COMMISSION OF THE STATE OF
   | FLORIDA; JEB BUSH, Florida Governor;
24 | KATHERINE HARRIS, Former Secretary
   | of State of Florida; L. CLAYTON
25 | ROBERTS, Florida Director of Division of
   | Elections; and DOES 1 through 10,
26 | inclusive;

27 |              Defendants.

28

1

1-1

I, Krishna Reddy, the Plaintiff, hereby allege:

## JURISDICTION

1. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. Sections 2201, et. seq., 1331, 1343 and 1344; and 42 U.S.C. Sections 1973, et. seq.

2. A three-judge Court is required to determine this action, pursuant to 28 U.S.C. Section 2284.

3. I have standing to bring this Citizen's suit for the unconstitutional Governmental actions, and unconstitutional nonGovernmental actions, which constitute actions under "color of law".

## NATURE OF ACTION

4. This is a Citizen's suit that is being brought by me pursuant to the United States Constitution and the Laws of the United States, for the unconstitutional Governmental actions and nonGovernmental actions of the defendants, which constitute actions under "color of law". I am seeking a declaration that each of the defendants acted in violation of the clearly established Federal Law. I am seeking declaratory and injunctive relief to set aside the Presidential Electoral votes of the States of Florida and Texas, that were cast in the 2000 Presidential election for the defendants GEORGE W. BUSH, Jr. and RICHARD B. CHENEY, as invalid and of no effect, and a declaration that GEORGE W. BUSH, Jr. and RICHARD B. CHENEY did not meet the required qualifications to be seated as the President and Vice President, respectively, of the United States. I am seeking a declaration that the former Vice President ALBERT A. GORE, Jr., and Senator JOSEPH I. LIEBERMAN, met the required qualifications and are the democratically-elected 43rd President and Vice President, respectively, of the United States. I am seeking a temporary injunction followed by a permanent injunction, to prevent any further official action by the illegally selected and seated President and Vice President, as well as, by their Administration, and to set aside and vacate all such actions taken thus far by them.

1-2

1  I am also seeking an order commissioning The Honorable ALBERT A. GORE, Jr., and

2  The Honorable JOSEPH I. LIEBERMAN, to the offices of the President and Vice

3  President, respectively, for a Constitutionally-fixed term of four years, to start from the

4  day they are both sworn into office.

## PARTIES

## PLAINTIFF

7      5.  I am the plaintiff in this action.  I am a Citizen of the United States, and a

8  resident of the State of California, residing in the County of San Bernardino,

9  California.

## DEFENDANTS

11     6.  At all times mentioned in this Complaint, defendant THE REPUBLICAN

12 PARTY, was, and is, a political party in the United States, and was acting through its

13 agents, to include the individual named defendants, its other Gubernatorial and

14 Congressional members, and their respective agents/employees, among others, who are

15 all responsible for the unconstitutional acts that are being complained about, by this

16 action.

17     7.  Defendant GEORGE W. BUSH, Jr. (hereafter, "BUSH"), was the Governor

18 of the State of Texas, and THE REPUBLICAN PARTY's Presidential candidate in the

19 2000 Presidential Election, and is currently seated as the President of the United States.

20 Defendant RICHARD B. CHENEY (hereafter, "CHENEY"), was THE

21 REPUBLICAN PARTY's Vice Presidential candidate, and is currently seated as the

22 Vice President of the United States.  Defendants JAMES A. BAKER, III; KARL

23 ROVE; ANDREW H. CARD, Jr.; and KAREN HUGHES; are/were agents/employees

24 of THE REPUBLICAN PARTY/BUSH-CHENEY Campaign, and defendants KARL

25 ROVE, ANDREW H. CARD, Jr., and KAREN HUGHES, are currently part of the

26 "BUSH Administration".  Defendant JOHN ASHCROFT, is the U.S. Attorney

27 General, who was appointed to that position by the BUSH administration.  It is my

28 belief that each of the above defendants is a Citizen of the United States.  It is my

*1-3*

1  belief that defendant KAREN HUGHES is currently a resident of the State of Texas,

2  and it is my belief that the rest of the above-listed defendants, are residents of the

3  District of Columbia.

4      8.  Defendant WILLIAM HUBBS REHNQUIST, is the Chief Justice of the

5  United States Supreme Court, and defendant SANDRA DAY O'CONNOR, defendant

6  ANTONIN SCALIA, defendant CLARENCE THOMAS, and defendant ANTHONY

7  M. KENNEDY, are the Associate Justices of the United States Supreme Court

8  (hereafter, "USSC defendants").  It is my belief that each of the above defendants is

9  a Citizen of the United States, and is a resident of the District of Columbia.

10      9.  At all times mentioned in this Complaint, defendant THE STATE OF

11  FLORIDA is one of the States in this Union, and acted by and through its agents, to

12  include the individual named State defendants, as well as, the Election officials of the

13  various Counties in Florida and the State Court Judges of Florida, who are all

14  responsible for the unconstitutional acts that are being complained about, by this

15  action. Defendant JEB BUSH, is a brother of defendant GEORGE W. BUSH, Jr., and

16  is the Governor of the State of Florida; defendant KATHERINE HARRIS, was the

17  Secretary of  State and the Supervisor of Elections for the State of Florida; and

18  defendant L. CLAYTON ROBERTS, is the Florida Director of the Division of

19  Elections; collectively, were "THE ELECTIONS CANVASSING COMMISSION OF

20  THE STATE OF FLORIDA".  It is my belief that each of the above individual Florida

21  State/County defendants, is a Citizen of the United States, and is/was a resident of the

22  State of Florida.

23      10.  At all times mentioned in this Complaint, defendant THE STATE OF

24  TEXAS is another State in this Union, and acted by and through its agents, to include,

25  the Presidential Electors of the State of Texas, and the Republican Party members of

26  the Legislative and Executive branches of the State Government of Texas.  It is my

27  belief that each of the above individual agents of the State of Texas, is a Citizen of the

28  United States, and is/was a resident of the State of Texas.

4

1 - 4

11. I do not know the true names of the defendants DOES 1 through 10, inclusive, and have not confirmed yet the names of some of those defendants that are known to me; therefore, I am suing them all by those fictitious names as DOE defendants. It is my belief that each of the DOE defendants is/was an agent/employee of THE STATE OF FLORIDA and/or THE STATE OF TEXAS and/or THE REPUBLICAN PARTY and/or the Bush Administration, including, but not limited to the individual Republican Party members of the Executive, Legislative and Judicial branches of Governments of the respective individual States and of the United States, that participated in the co-conspiracy with the defendants to indulge in their unconstitutional acts, which are the subject of this Complaint. Even though a conspirator to a conspiracy did not benefit from the conspiracy, and joined the ongoing conspiracy later on, he/she is still liable along with the rest of the co-conspirators for all the illegal activities that took place prior to their joinder. Therefore, each of the co-conspirators is being joined in this action as DOE defendants. It is my belief that the number of those fictitious defendants could be more than the limit of 10 allowed under this Court's Local Rules. Once their identify is known and confirmed after conducting the necessary discovery, I will amend this Complaint to include their true names.

12. Each of the above-mentioned individual defendants, in doing the things alleged in this Complaint, was acting within the course and scope of that agency and employment with the other named agencies and employers, as well as individually, for his/her own personal gain. Therefore, each individual defendant is being sued both in his/her official, as well as, individual capacities.

## REAL PARTIES IN INTEREST

13. The former Vice President, the Honorable ALBERT A. GORE, Jr. (hereafter, "GORE"), and Senator, the Honorable JOSEPH I. LIEBERMAN (hereafter, "LIEBERMAN"), are the real parties in interest, to this action.

1-5

## STATEMENTS

14. The qualifications of the President and Vice President of the United States are provided by Article II of the United States Constitution. Those qualifications are fixed and are indispensable, and must be met by the elected Presidential and Vice Presidential candidates before they take office. As explained below, BUSH and CHENEY did not meet the necessary qualifications to hold their respective offices, either on December 18th, 2000, when the Presidential Electors voted for them, or on January 20th, 2001, the day BUSH and CHENEY were sworn in as President and Vice President, respectively, of the United States, while GORE and LIEBERMAN met those qualifications required to hold the offices of the President and Vice President, respectively, of the United States, on those same days.

15. During the 2000 Presidential election of the United States that took place on November 7th, 2000, the former Vice President GORE won the Nation's popular vote by more than half a million votes. The official Presidential Electoral votes cast for GORE and LIEBERMAN were 266 each, while the official Presidential Electoral votes cast for BUSH were 214 out of a total of 513 qualified Electoral votes, since the Florida Presidential Electors were restrained by the United States Supreme Court (hereafter, "USSC") on December 12th, 2000, from participating in the 2000 Presidential election, pursuant to the "Apportionment Clause", Section 2 of the Fourteenth Amendment to the United States Constitution, which became applicable to the Florida Presidential Electoral votes on December 12th, 2000, after the USSC ordered the Florida recounts to stop, on December 12th, 2000. With respect to the Texas' Presidential Electoral votes, CHENEY was not a Citizen of any State on December 18th, 2000; therefore, was not eligible for any State's Electoral votes on December 18th, 2000. Therefore, the Texas Presidential Electors automatically disqualified themselves on December 18th, 2000, pursuant to Section 3 of the Fourteenth Amendment to the United States Constitution, by casting their votes in violation of Article II, Section 1, clause 2, of the United States Constitution, by voting

6

**1 - 6**

for the only qualified Republican Party candidate, BUSH, who was also an inhabitant of the same State as the Texas Presidential Electors were, i.e., the State of Texas, thus effectively invalidating the Texas Electoral votes for BUSH.

16. With 266 Electoral votes each for GORE and LIEBERMAN versus 214 and -0- Electoral votes respectively for BUSH and CHENEY, GORE and LIEBERMAN were qualified from December 18th, 2000, through January 20th, 2001, to be seated as the President and Vice President, respectively, of the United States. However, the wrong persons have been seated as the President and Vice President, respectively, instead, and pursuant to 3 U.S.C. Section 19, the Twentieth Amendment to the United States Constitution, and Article II of the United States Constitution, GORE and LIEBERMAN, who are the democratically-elected President and Vice President, respectively, must be seated as the 43rd President and Vice President, respectively, of the United States, for reasons set forth below.

17. Each of the Governmental defendants violated his/her Constitutional Oath and each of the nonGovernmental defendants conspired with the Governmental defendants, to carry on the unconstitutional activities that are being complained about, by this action. Each of the defendants' actions thus falls under "actions under color of law". Each of the Governmental defendants, therefore, has disqualified to hold any public office, and the Governmental defendants must voluntarily resign from holding the offices that they are currently holding, for reasons set forth below.

I

**THE MEMBERS OF ALL THE THREE BRANCHES OF THE STATE AND FEDERAL GOVERNMENTS ARE BOUND BY THEIR CONSTITUTIONAL OATH OF OFFICE, TO SUPPORT THE CONSTITUTION OF THE UNITED STATES.**

18. The United States Constitution and the Laws of the United States that are made in pursuance thereof, and that are in compliance with the Constitution, are the

1-7

**Supreme Law of the Land**, pursuant to Article VI, clause 2, of the United States Constitution.

19. Each of the individual Governmental defendants is a public official, either State or Federal, and is bound by his/her "Constitutional Oath of office" to "support the United States Constitution", pursuant to Article VI, clause 3, of the United States Constitution. The "Federal law" includes, not only the Constitution and Congressional enactments and treaties, but also the interpretations of their meanings by the USSC. In the case of ***Cooper v. Aaron, 358 U.S. 1, 18-19 (1958)***, the USSC wrote as follows:

Article VI of the Constitution makes the Constitution the "supreme Law of the Land." In 1803, Chief Justice Marshall, speaking for a unanimous Court, referring to the Constitution as "the fundamental and paramount law of the nation," declared in the notable case of Marbury v. Madison, 1 Cranch 137, 177, that ***"It is emphatically the province and duty of the judicial department to say what the law is." This decision declared the basic principle that the federal judiciary is supreme in the exposition of the law of the Constitution***, and that principle has ever since been respected by this Court and the Country as a permanent and indispensable feature of our constitutional system. ***It follows that the interpretation of the Fourteenth Amendment enunciated by this Court*** in the Brown case ***is the supreme law of the land***, and Art. VI of the Constitution makes it of binding effect on the States "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." ***Every state legislator and executive and judicial officer is solemnly committed by oath taken pursuant to Art. VI, cl. 3, "to support this Constitution."*** Chief Justice Taney, speaking for a unanimous Court in 1859, said that this requirement reflected the framers' "anxiety to preserve it [the Constitution] in full force, in all its powers, and to guard against resistance to or evasion of its authority, on the part of a State . . . ." Ableman v. Booth, 21 How. 506, 524.

***No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it.*** Chief Justice Marshall spoke for a unanimous Court in saying that: "If the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, ***the constitution itself becomes a solemn mockery*** . . . ." United States v. Peters, 5 Cranch 115, 136. A Governor who asserts a power to nullify a federal court order is similarly restrained. If he had such power, said Chief Justice Hughes, in 1932, also for a unanimous Court, "it is manifest that the fiat of a state Governor, and not the Constitution of the United States, would be the supreme law of the land; that the restrictions of the Federal Constitution upon the exercise of state power would be but impotent phrases . . . ." Sterling v. Constantin, 287 U.S. 378, 397-398. (emphasis added)

1-8

20. Making a "mockery of the United States Constitution" by waging a war against the Constitution is exactly what each of the defendants has done and continues to do, with their blatant disregard for the Constitution, and with their illegal activities!

21. The "chain of command" in the Federal law is that the Acts of Congress yield to the United States Constitution [see ***Fairbank v. U.S., 181 U.S. 283, 285-287 (1901)*** - quoting Chief Justice Marshall in Marbury v. Madison, 1 Cranch, 137, 177, 2 L. ed. 60, 73, the Court held  that an Act of Congress is to be accepted as constitutional unless on examination it clearly appears to be in conflict with provisions of the Federal Constitution]. The fundamental rights contained in the Bill of Rights are safeguarded by the first eight amendments against Federal action, and were also safeguarded against any State action by the due process clause of the Fourteenth Amendment to the United States Constitution [see ***Grosjean v. American Press Co., 297 U.S. 233, 243-244 (1936)***]. The Articles of the United States Constitution are deemed the "Canons of Constitutional Construction", and the text of the Articles is deemed not occasional but fixed [see ***U.S. Term Limits, Inc., v. Thornton, 514 U.S. 779, 787-793 (1995)***]. The only way that the text of the Articles can be altered, is by going into another Republic and re-writing the Constitution. The Framers after accidentally leaving behind the "fundamental rights", supplemented the Constitution with the "Bill of Rights", but did not go into a second Republic then, to re-write the Constitution.  Over the years, the intelligent Justices of the United States Supreme Court, "preserved" the United States Constitution in its original form without the need to re-write the Constitution.  All it took was for the five USSC defendants to make functional alterations to the Constitution unilaterally without the approval of a majority of the Americans, just so that they could seat BUSH illegally as the President, though he did not meet the required qualifications to be seated as the President.

22. Any violation by a public official of his/her Constitutional Oath results in his/her **automatic disqualification** to hold any public office, either civil or military, pursuant to Section 3 of the Fourteenth Amendment to the United States Constitution.

1 - 9

Congress enacted 18 U.S.C. Section 2381, et. seq.; Section 2381 for treason, and Section 2383 for rebellion or insurrection, with "disqualification to hold office" as one of the remedies for Constitutional violations.

## II

## THE QUALIFICATIONS OF THE PRESIDENT AND VICE PRESIDENT OF THE UNITED STATES ARE NOT OCCASIONAL BUT FIXED, ARE INDISPENSABLE, AND MUST BE MET.

23.  The qualifications of the members of the Legislative and Congressional branches of the Federal Government, are fixed by the Constitution, are unalterable [see *U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 787-798, 837 (1995)* - held that the qualifications of the members of Congress and the President, are not occasional but fixed; and see *Federalist Papers, No. 60* by Alexander Hamilton - the intent of the framers was that the qualifications of the persons who may choose or be chosen, are defined and fixed in the Constitution, and are unalterable] and are indispensable, and must be met [see *"Hinds' Precedents of the House of Representatives (Washington: 1907)", Volume I, Chapter XIII, Section 435 at pages 422-423* - in the Virginia election case of *Bayley v. Barbour* in the Forty-seventh Congress, it was held that the qualifications of the members are fixed by the Constitution and are "indispensable" to the holding of a seat].

24.  Article II of the United States Constitution provides for the qualifications of the President and Vice President. Section 1, clause 3 of Article II, provides for a "State Citizenship" requirement for the Presidential and Vice Presidential candidates, and also provides for the qualification that the Presidential candidate "must have the greatest number of electoral votes" cast by the Presidential Electors, and that the Vice Presidential candidate "must have the greatest number of electoral votes" of all the remaining Electoral votes. Section 1, clause 2 of Article II, provides for the

10

*1 -10*

1  "appointment" of the Presidential Electors by the States, as "in such manner as the
2  Legislature thereof may direct".
3       25.  Each and every State in the Union, in conformity with the intent of the
4  Framers, gave the "right to choose the Presidential and Vice Presidential Electors" back
5  to the people of the respective States, pursuant to Section 2 of the Fourteenth
6  Amendment to the United States Constitution, thereby incorporating the right to vote
7  for a Presidential Elector, into the fundamental right to vote of every Citizen in the
8  Union.  As the USSC defendants stipulated in the case of *Bush v. Gore, 121 S.Ct.*
9  *525, 529 (2000)*, "when the State legislature vests the right to vote for President in its
10 people, the right to vote as the legislature has prescribed is fundamental; and one
11 source of its fundamental nature lies in the equal weight accorded to each vote and the
12 equal dignity owed to each voter".  Pursuant to the "Apportionment Clause", Section
13 2 of the Fourteenth Amendment, the States have consented for "apportionment" of the
14 Presidential Electoral votes of the States, in case of denial of the right to vote for the
15 Presidential Electors, to its Citizens.  The only power retained by the States with
16 respect to the appointment of the Presidential Electors is the ministerial function of
17 "appointing" those chosen by its people; whether Electors of a single political party
18 from the State's popular vote, or Electors of a mixture of political parties from the
19 individual Congressional District's popular vote.  All the States in the Union have been
20 appointing a single party Presidential Electors from the respective State's popular vote.
21 Beyond that ministerial function retained by the States, none of the States in the Union
22 has the authority to unilaterally take back the fundamental right of its people to choose
23 the Presidential Electors, since the repeal of the Fourteenth Amendment can only be
24 done by another Amendment to the United States Constitution, which requires
25 ratification by the Legislatures of three-fourths of the States in the Union, pursuant to
26 Article V of the United States Constitution.  When Congress legislates pursuant to its
27 delegated powers, conflicting State law and policy must yield, and the operation of the
28 Supremacy Clause may be seen as well when the authority of Congress is not express,

**1 - 11**

1    but implied, not plenary but dependent upon State's acceptance. Once the State

2    accepts the legislation of Congress, the State's own legislation, which is contrary to the

3    federal law, becomes void under the Supremacy Clause [see *Gibbons v. Ogden, 22*

4    *U.S. (9 Wheat.) 1, 210-211 (1824)*].

5    26. The Legislature of the State of Florida complied with the Fourteenth

6    Amendment, which it ratified on June 9th, 1868, and provided for the election of

7    Presidential Electors by direct election by popular vote, pursuant to Florida Election

8    Code, Title IX, Chapter 103, Sections 103.011 [election of Presidential Elector by

9    State's popular vote] and 103.021(2) [vote for the Presidential and Vice Presidential

10   candidate is deemed vote for the Presidential Elector]. The Florida legislature also

11   provided for disqualification of Presidential Electors pursuant to Section 103.131(7)

12   [political party office deemed vacant by the decision of a competent tribunal declaring

13   void his or her election or appointment, and his or her removal by said tribunal], and

14   also provided provisions for the ouster of wrongfully seated candidates and for voiding

15   of an election pursuant to Section 102.1682(1),(2).

16   27. Section 3 of the Twentieth Amendment to the United States Constitution

17   provides for alternatives in case the President-elect and the Vice President-elect fail to

18   qualify, and also provides for the time in which a President must qualify, as extending

19   up to four years, i.e., until the next Presidential election. Once qualified, the President

20   has a <u>fixed</u> term of four years to serve, pursuant to Article II, Section 1, clause 1, of the

21   United States Constitution. The United States Code, 3 U.S.C. Section 19, also

22   complies with the Twentieth Amendment and makes it mandatory for the pro tem

23   President to step down once a prior-entitled individual is able to act. Therefore, BUSH

24   and CHENEY are expected pursuant to their Constitutional Oath of office "to support

25   the United States Constitution", to step down as they did not meet the qualifications

26   to hold offices as the President and Vice President, respectively, of the United States,

27   and declare GORE and LIEBERMAN as the President and Vice President,

28   respectively, of the United States.

12

1 - 12

### III

## BUSH AND CHENEY DID NOT MEET THE QUALIFICATIONS THAT ARE MANDATORY TO HOLD OFFICE.

28.  As explained below, both Florida and Texas' Electoral votes were disqualified, reducing the total number of Electoral votes for BUSH to 214, and CHENEY's total Electoral votes were -0-, while GORE and LIEBERMAN had total Electoral votes of 266, each.  Therefore, neither BUSH nor CHENEY met the indispensable qualifications required to hold the office of the President and Vice President, respectively, either on December 18th, 2000, the day that the Presidential Electors elected the President and Vice President, or on January 20th, 2001, when BUSH and CHENEY were sworn in as President and Vice President, respectively.

### A

## DISQUALIFICATION OF FLORIDA ELECTORAL VOTES

29.  The right to vote has been called a "fundamental matter in a free and democratic society" [see *Reynolds v. Sims, 377 U.S. 533, 561-568 (1964)*].  The USSC, in the case of *Gary v. Sanders, 372 U.S. 368, 381 (1963)*, wrote, "the conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing - one person, one vote."  The Fourteenth Amendment to the United States Constitution guarantees equal protection of laws and equal privileges to each and every Citizen.  The Fifteenth Amendment to the United States Constitution guarantees each and every one of its citizen, the right to vote.  The Fifteenth Amendment and the Voting Rights Act of 1965, 42 USC Section 1973, et seq., to which the State of Florida and all its political subdivisions are subject, provide for guaranteed voting rights of a fundamental right to vote, to cast a vote in both the State and National elections, and to have those votes counted honestly.  The State election officers are subject to indictment in Federal Courts for wrongfully refusing to receive or count election returns.  The right to have one's vote counted is as open to protection

13

**1-13**

by Congress as the right to put a ballot in a box. The integrity of the process may be safeguarded against a failure to count ballots lawfully cast [***United States v. Mosley, 238 U.S. 383, 386-388 (1915)***], and the responsible election officials having State election duties could be sued. The right of suffrage is denied by debasement or dilution of a citizen's vote in a State or Federal election. Weighing votes differently according to where citizens happen to reside is <u>discriminatory</u> [see ***Reynolds v. Sims, 377 U.S. 533, 554-568 (1964)***].

30. Congress may adopt the statutes of the States and enforce them by its own sanctions. It may punish a State election officer for violating his duty under a State law governing Congressional elections [see ***Ex parte Siebold, 100 U.S. 371, 377-399 (1880)***]. Congress also enacted 42 U.S.C. Sections 1983, 1985 and 1986, and 18 U.S.C. Sections 371-372, 594, 2381, 2383, 2384, among others, to protect the voting rights.

31. In the case of ***Bray v. Alexandria Clinic, 506 U.S. 263, 296, fn 5-6 (1993)***, Justice SOUTER, quoting Senator Edmunds, explained that "equal protection" was not limited to those based on race or some closely comparable personal quality, but that "any type of discrimination" would violate equal protection clause:

> Some of the legislative history of 2 of the 1871 Act suggests that the omission of any reference to race from the statutory text of equal protection was not the result of inadvertence, and that Congress understood that classifications infringing the statutory notion of ***equal protection*** were not to be limited to those based on race or some closely comparable personal quality. The most significant, and often quoted, evidence came from Senator Edmunds, who managed the bill on the Senate floor and remarked that ***if there were a conspiracy against a person "because he was a Democrat***, if you please, or because he was a Catholic, or because he was a Methodist, or because he was a Vermonter...***then this section could reach it."*** Cong. Globe, 42d Cong., 1st Sess., at 567. fn5. These are not, of course, all examples of discrimination based on any class comparable to race, and the Senator's list counters any suggestion that the subject matter of statutory equal protection was meant to be so confined. fn 6. (emphasis added)

14

1- 14

32. As per the United States Commission on Civil Rights' report, **"Report on Voting Irregularities in Florida During the 2000 Presidential Election"** from June 2001, available on the Internet at URL: <http://www.usccr.gov> under the Section "Vote 2000", under the link, "The 2000 Presidential Election", per the Statement of Commissioner Victoria Wilson, the African-American Floridians that were Democrats, were discriminated based on their race, as well as, for being Democrats, and all other minorities in Florida that were Democrats, were also discriminated by the defendants because they were minorities, as well as, for being Democrats. It was reported by the Commission that the conspiracy to wilfully defraud the United States during the 2000 Presidential election, allegedly began almost 18 months before November 2000, with the election of a new Secretary of State, and her taking office in January 1998. The conspiracy allegedly involved the Florida State Officials, to include, THE ELECTIONS CANVASSING COMMISSION OF THE STATE OF FLORIDA and its agents; defendant JEB BUSH, Governor of the State of Florida; defendant KATHERINE HARRIS (hereafter, "HARRIS"), Secretary of State for the State of Florida; and defendant L. CLAYTON ROBERTS, Florida Director of Division of Elections; among others, to violate the provisions of the Voting Rights Act, by intimidating and harassing the Florida voters. That was reported by the Commission to have resulted in "extraordinarily high and inexcusable level of disenfranchisement of Florida voters, with a significantly disproportionate impact on African-American voters". According to that report, the voters in quite a few Counties of Florida have disproportionately been denied their right to cast their vote, and a disproportionate number of minorities to include the financially-poor voters in Florida did not have their votes counted at all. In summary, the Commission concluded that "Voter disenfranchisement was at the Heart of the Issue". The Commission's report supports the application of the Apportionment Clause, Section 2 of the Fourteenth Amendment, to the Florida Presidential Electoral votes, and disqualifies all the 25 Florida Presidential Electoral votes that were cast for BUSH and CHENEY.

1 - 15

33. The Supervisor of Elections for Palm Beach County of Florida, THERESA
LEPORE, allegedly designed a "butter fly" ballot for the 2000 Presidential elections,
which, the Florida voters of that County, complained as "illegal, confusing and
misleading", pursuant to Florida Election Code, Section 101.151, subsections (3)(a)
and (4), which read as follows:

> (3)(a) Beneath the caption and preceding the names of candidates shall
> be the following words: "*To vote for a candidate whose name is printed
> on the ballot, place a cross (X) mark in the blank space <u>at the right of
> the name of the candidate</u> for whom you desire to vote...* (emphasis
> added)

> (4) The names of the candidates of the party which received the highest
> number of votes for Governor in the last election in which a Governor
> was elected shall be placed first under the heading for each office,
> together with an appropriate abbreviation of party name; *the names of
> the candidates of the party which received the second highest vote for
> Governor shall be <u>second under the heading</u>* for each office, together
> with an appropriate abbreviation of the party name. (emphasis added)

34. It was later reported by the "Palm Beach Post" on November 12th, 2001, that
ballot design resulted in "overvotes" that were not counted by the machines as "votes",
producing approximately 6,600 overvotes for GORE in Palm Beach County of Florida,
and that the "caterpillar" ballot similarly caused voter confusion, resulting in overvotes
in Duval County of Florida as well, for GORE.

35. In the aftermath of November 7th, 2000 Presidential election, the Florida
Presidential election was too close, and GORE timely contested the Florida Election
results. During the post-election contest period, though the GORE voters were entitled
to have their votes counted, the defendants did everything in their power to stop the
recounts, in violation of the Voting Rights Act, and the Fourteenth and Fifteenth
Amendments to the United States Constitution. In fact, HARRIS' office was reported
to have been the headquarters for BUSH-CHENEY Campaign, to issue orders through
HARRIS, on how to selectively reject the GORE votes from being counted, and it was
discovered that GORE votes, including Military votes for GORE, were rejected
selectively in the Republican Counties. These facts have all been reported by the
media based on credible evidence from witnesses, and by searching HARRIS'

1-16

1  computers though she conveniently deleted the files out of them.  The defendants

2  BUSH, CHENEY, JEB BUSH, HARRIS, L. CLAYTON ROBERTS, and other

3  Republicans, to include defendants JAMES A. BAKER, III; KARL ROVE,

4  ANDREW H. CARD, Jr., and KAREN HUGHES, among others, did everything they

5  possibly could, to stop the recounts, starting from intimidating the voters, intimidating

6  the election officials that  were counting the votes; filing lawsuits to enjoin the

7  recounts; and issuing subpoena for the recounts to stop after the State Court and

8  Federal Court issued orders that the recounts must proceed; all the way to indulging in

9  mob activities to stop the recounts; all of which violate the clearly established Federal

10  law.

11       36.  Pursuant to Article IV of the United States Constitution, GORE voters were

12  entitled to the same privileges as the Texans  under the Texas law, to have their votes

13  that were not registered by the machines, manually counted, based on the standards

14  established by defendant BUSH himself, i.e., "intent of the voter".  Texas Election

15  Code, Chapter 127, Section 127.130(d),(e), regarding "Manual Counting" has clear

16  guidelines to look for the "intent of the voter" during manual counting, and reads as

17  follows:

18       §§ 127.130. Manual Counting

19       (d) Subject to Subsection (e), in any manual count conducted under this
         code, a vote on a ballot on which a voter indicates a vote by punching a
20       hole in the ballot may not be counted unless:
         (1) at least two corners of the chad are detached;
21       (2) *light is visible through the hole*;
         (3) *an indentation on the chad from the stylus or other object is present*
22       *and indicates a clearly ascertainable intent of the voter to vote*; or
         (4) *the chad reflects by other means a clearly ascertainable intent of*
23       *the voter to vote.*
         (e) Subsection (d) *does not supersede any clearly ascertainable intent of the*
24       *voter.*  (emphasis added)

25       37.  When the Texas guidelines were attempted to be followed in the Florida

26  recounts, defendant JAMES BAKER, III, was seen on the television, trying to make

27  a case that the recounts must be stopped, and defendant KAREN HUGHES, who

28  seems to be having an inappropriate relationship with defendant BUSH, was seen on

17

1-17

1   the television, very defensive, and making fun of the Florida County Election officials,

2   who were trying to hold the ballots to the light to see if "light was visible through any

3   punched holes in the ballot", to "ascertain the intent of the voter". The actions of the

4   those defendants also fall under 42 U.S.C. Section 1985, as well as, 18 U.S.C. Sections

5   531, et. seq., among others.

6       38.   It is now apparent from the media recounts released on November 12th,

7   2001, that though the intent of the voter was clear on the ballots, Judge CHARLES E.

8   BURTON, a member of THE PALM BEACH COUNTY CANVASSING BOARD

9   OF FLORIDA, counted those votes just as the machine did [see *Moore v. Hayes, 744*

10  *P.2d 934, 941 (Okl. 1987)* - held that the manual recounts should not be conducted "in

11  the same manner" as the electronic counting equipment], would not look for the intent

12  of the voter [see *United States v. Executive Com. Of Dem. P. Of Dallas Co., Ala.,*

13  *254 F. Supp. 537, 542 (1966)* - held that there shall be no rejection of any ballot on

14  any ground, other than that the ballot does not reflect the intention of a qualified voter],

15  and disqualified approximately 6,600 of GORE overvotes. The Florida State Circuit

16  Judges, Judge TERRY LEWIS and Judge N. SANDERS SAUL, neither allowed for

17  the inclusion of the overvotes in the final counts, nor ordered a new election in those

18  Counties with the illegal ballot designs that caused voter confusion; therefore, each of

19  them acted in violation of their own State's law [see *Beckstrom v. Volusia County*

20  *Canvassing Board, 707 So. 2d 720, 725 (Fla. 1998)*], as well as, the Federal law [see

21  *Hadnott v. Amos, 394 U.S. 358, 367 (1969)* - new election was authorized due to

22  voting irregularities]; therefore violated their Constitutional Oath.

23      39.   The BUSH-CHENEY Campaign, along with the Florida State Election

24  officials and other Republican Party members, that allegedly included Republican

25  Party's Congressional staffers, also managed to indulge in mob activities, successfully

26  stopping the manual recounts in Miami-Dade County; those actions fall under 18

27  U.S.C. Section 372.

28

1 - 18

40.   HARRIS, who apparently had ulterior motives of her own, initially announced that she wanted to become an "Ambassador". She then changed her mind and wanted to run for Congress to "serve the President" [per the USSC, only those people who want to "serve the People" should be running for public office], instead of applying for a Presidential-aide position to "serve the President". HARRIS, who did not file a timely resignation as the Secretary of State of Florida, managed to stay on the ballot for the Republican primaries in 2002 for Congress from her Congressional District, in violation of the Florida election laws, as usual; her explanation was that she "didn't have it in her head" to timely resign! Under the current Federal law, though all the votes must be counted in the 2000 Presidential election, HARRIS abused her power as a State Election official, and did everything in her power to steal the election for BUSH, including the issuance of subpoena to the Miami-Dade County Election officials to stop the recounts, even after a District Court's determination that the Florida recounts should proceed, and even after GORE obtained a Court order for the recounts to proceed. HARRIS' actions also are subject to 18 U.S.C. Section 372 [see ***Ex Parte Siebold, 100 U.S. 371, 377-399 (1879)*** - the Supreme Court upheld an indictment for offences alleged to have been committed whilst being judges of election].

41.   The Republican Party members of both Florida State and Federal Legislatures also attempted to change the Florida State and Federal law after November 7th, 2000, to help BUSH win the presidency! The Florida Republican Legislature even voted to recommend a special session to appoint its own set of Presidential Electors, though after giving the selection of Presidential Electors back to the voters and providing for post-election contests, the Legislature's powers and function are deemed to have ended [see ***Opinion of the Justices, 34 So.2d 598, 600 (Ala. 1948)*** - held once the legislature has provided for the appointment of Electors, its powers and functions have ended].

19

1-19

42.   On December 8th, 2000, the Florida Supreme Court's order in GORE's Election contest case, added the legal votes that were refused to be included in the total counts by HARRIS, to GORE, which reduced the BUSH margin to a 154-vote lead. The Florida Supreme Court also ordered a Statewide recount of all those votes that did not register a vote by the machine, with the applicable standards being "intent of the voter", in compliance with those same standards set by the Federal Court in the case of *United States v. Executive Com. Of Dem. P. of Dallas Co., Ala., supra, 254 F. Supp. 537, 542 (1966)*. However, the USSC defendants, each of whom appeared to have his/her own ulterior motives to preclude GORE from winning the Presidency, conspired with each of the other defendants to defraud the United States, did not recuse themselves from hearing matters in the case though grounds existed for their recusal, but issued a stay of the Florida Supreme Court's ruling, and thus effectively stopped the ongoing Florida recounts, on December 9th, 2000.

43.   On December 12th, 2000, the USSC defendants issued a ruling [see *Bush v. Gore, 121 S. Ct. 525 (2000)*], saying that BUSH "stipulated that there were 176 votes from Palm Beach County for Vice President Gore" [at page 527]; that "the problem of the estimated 110,000 overvotes has not been addressed" [at page 532]; stipulated that "the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation" [at page 534]; relied heavily on Florida State law to determine the outcome of the Federal election and also injected a "literacy requirement" that has already been banned by Congress, by defining a "legal vote" as that which complies with the "written voting instructions" [at page 537], in violation of the case law of *Oregon v. Mitchell, 400 U.S. 112, 124-134 (1970)*, in which the USSC held that the local and State Election laws are <u>inapplicable</u> to Federal elections and that the "literacy test" is a racially discriminatory practice and is unconstitutional; and the USSC defendants ordered the recounts to stop, in violation of the case law of *Roudebush v. Hartke, 405 U.S. 15, 21-22 (1972)*, in which, the Supreme Court held that the recounts could proceed even after the candidate is seated.

20

**1-20**

1   The USSC defendants also ruled that HARRIS could interpret the Election laws, in

2   violation of the "Separation of Powers" doctrine [see ***New York Times Co. v. United***

3   ***States, 403 U.S. 713, 742 (1971)*** - held that the Constitution provides that Congress

4   shall make laws, the President execute laws, and Courts interpret laws].

5       44.   That <u>unsigned</u> opinion from December 12th, 2000, was labelled "per

6   curiam" [see ***Bush v. Gore, 121 S. Ct. 525, 527 (2000)***], though was <u>not an unanimous</u>

7   <u>decision</u>, since only three justices, J. REHNQUIST, J. SCALIA and J. THOMAS,

8   "concurred" with that allegedly "per curiam" opinion, while four nonconcurring

9   justices, J. STEVENS, J. SOUTER, J. BREYER and J. GINSBURG, wrote their

10  dissenting opinions. Defendant J. REHNQUIST, allegedly said that "he did not feel

11  comfortable to sign that December 12th, 2000, order; reason why he left it unsigned!"

12  A "per curiam opinion" is defined by the Legal Dictionary available on the Internet at

13  URL: <http://dictionary.lp.findlaw.com>, as "by the Court as a whole", and as "a usu.

14  very brief unanimous opinion attributed to the court as a whole and not to any

15  particular judge". In the case of ***Lawrence v. Chater, 516 U.S. 163, 189; 116 S. Ct.***

16  ***611, 617 (1996)***, defendant J. SCALIA wrote in his dissenting opinion, that "...it

17  would be wrong to conclude from the unsigned order...that the vote...was unanimous,

18  or even close to unanimous...." Applying defendants' own "standards for legal votes",

19  that the "intent of the voter could not be counted as a legal vote", it would be fair to

20  assume that unless all five USSC defendants' names, who allegedly rendered that "per

21  curiam" opinion, appear in that order, it would not even be a "majority opinion", let

22  alone a "per curiam" opinion, and since only three of the justices' names appear in that

23  order as "concurring justices", the four dissenting justices effectively <u>outnumbered</u> the

24  three "concurring justices" of the USSC defendants, by a vote of 4-3 in favor of GORE

25  for the recounts to proceed, and that decision can only be said to be in favor of GORE,

26  and for the recounts in Florida, to proceed.

27      45.   It is my belief that the defendants BUSH and the USSC defendants,

28  conspired to defraud the people of the United States, and they intentionally withheld

21

**1-21**

1 | that December 12th ruling that obviously was ready anywhere between 12 noon and
2 | 5:00 p.m. that day, and released it at approximately 10:00 p.m. Eastern Standard Time
3 | that day, just to preclude GORE from adding any more votes to his total vote count,
4 | erase BUSH's 154-vote lead, and win the Presidency [since by Florida law, a count
5 | from a minimum of three precincts would have been eligible to be added to the total
6 | count to put GORE ahead of the 154-vote lead that BUSH had at that time, pursuant
7 | to Florida Election Code, Title IX, Chapter 102, Section 102.166, Subsection (4)(d)],
8 | based on an e-mail that was allegedly written by BUSH to me, at approximately 5:57
9 | p.m. on December 12th, 2000, which read, "Although you have supported that dweeb,
10 | Al Gore, I welcome you to join the good side..." [see Exhibit A, attached to this
11 | Complaint as pages 37-38, the e-mail with the e-card that I received on December 12th,
12 | 2000, allegedly from defendant "George W. Bush"].  The actions of the defendants
13 | constitute "extrinsic fraud", and violate 42 U.S.C. Section 1985, among others, for
14 | keeping GORE's team in the dark regarding that ruling that was released to BUSH
15 | only, and ex parte, obviously long before 10:00 p.m. on December 12th, 2000.

16 |     46. That "per curiam" order of the five USSC defendants from December 12th,
17 | 2000, thus not only restrained the recount of the Florida votes, but effectively
18 | invalidated the Florida Presidential election and restrained the Electors of Florida from
19 | participating in the Presidential election in 2000, pursuant to the Apportionment
20 | Clause, based on the case law of the case cited in that order by the USSC defendants
21 | in *Bush v. Gore, supra*; the case of *McPherson v. Blacker, 146 U.S. 1, 39 (1892),*
22 | which reads as follows:

23 |
The first section of the fourteenth amendment does not refer to the exercise of the elective franchise, though *the second provides that if the right to vote is denied or abridged to any male inhabitant of the state having attained majority, and being a citizen of the United States, then the basis of representation to which each state is entitled in the congress shall be proportionately reduced. Whenever presidential electors are appointed by popular election, then the right to vote cannot be denied or abridged without invoking the penalty*; and so of the right to vote for representatives in congress, the executive and judicial officers of a state, or the members of the legislature thereof.(emphasis added)

**1-22**

1    47.   However, defendant HARRIS, chose her own personal choice of

2  Presidential Electors and sent in her own list, in violation of the Fifteenth and

3  Fourteenth Amendments, and the Voting Rights Act, 42 U.S.C. Sections 1973, et. seq.,

4  and Florida Election Code, Section 103.131(7).

5    48.   On remand from the December 12th, 2000, order by the USSC, the Florida

6  Supreme Court Justices wrote as follows on December 22nd, 2000:

7        Justice Shaw wrote at pages 4-5, as follows: "...A fundamental principle
         underlying all legal proceedings is the search for the truth. *Once the*
8        *truth is uncovered, we assume that a remedy can be fashioned*. The
         present case posed a simple question: Who won the presidential election
9        in Florida? The answer, in the eyes of many, also was simple: *The truth*
         *lies in the vaults and storage rooms throughout the state where the*
10       *untabulated   ballots   of   thousands   of   Floridians   are*
         *sequestered*....(emphasis added)

11

12       And Justice Pariente wrote at pages 12-14, as follows:  Whatever the
         reason, we now know that not every vote intended to be cast for a
13       candidate in this November 7, 2000, presidential election in Florida was
         tabulated and counted as a vote....although manual recounts were
14       completed in several counties, in other counties the ballots for which the
         machine did not register a vote--the "undervotes"--were never examined
15       manually to ensure that all legal votes were counted...but that *thousands*
         *of voters in Florida did not have their vote included in this State's*
16       *presidential election* (emphasis added)

17    49.   The Supreme Court said that the Legislature of a State could authorize the

18  Supreme Court of the State to appoint the Presidential Electors, in the case of

19  *McPherson v. Blacker, supra, 146 U.S. 1, 34-35 (1892)*, as follows:

20       They may be chosen by the legislature, or the legislature may provide that
         they shall be elected by the people of the state at large, or in districts, as
21       are members of congress, which was the case formerly in many states;
         and *it is not doubt competent for the legislature to authorize the*
22       *governor, or the supreme court of the state, or any other agent of its*
         *will, to appoint these electors*.  (emphasis added)
23

24    50.   Justice Shaw and Justice Pariente of the Florida Supreme Court, in their

25  official capacity, are deemed "State actors", and their actions are deemed "State

26  actions".  They are authorized to appoint Presidential Electors pursuant to the powers

27  given to them by the Florida State Legislature, as per the Florida Election laws, which

28  provide for post-election contests in a <u>Court of Law</u>.  Therefore, those "judicial

1-23

1  declarations" by Justice Shaw and Justice Pariente, also effectively disqualified BUSH

2  and CHENEY on the day they were sworn into office in January 20th, 2001, and made

3  their status - "not qualified", by applying the Florida Election Code, Section

4  103.131(7), and the Apportionment Clause, Section 2 of the Fourteenth Amendment

5  to the United States Constitution, to the Florida Presidential Electoral votes.

6      51.  Those untabulated votes in the Florida storage rooms that the Florida

7  Supreme Court justices mentioned, have all been counted by the media organizations.

8  Excerpts from the "Palm Beach Post", under the heading '**If clearly marked "over-**

9  **votes" had counted**' by the staff writer, Mr. Gary Kane, from November 12, 2001,

10  are as follows:

> Had election officials eyeballed every ballot rejected by tabulating machines as over-votes to see whether any were clearly-valid votes, *Al Gore would have won last year's presidential election by 350 votes.*
>
> Beyond those types of ballots, *the former vice president probably lost thousands of votes cast by Floridians* who marked their ballots for more than one candidate because they were confounded *by confusing ballots* such as Palm Beach County's "butterfly ballot" and Duval County's "caterpillar."
>
> Consider that 70,616 over-votes statewide included a mark, dimple, hanging chad, partial or cleanly-punched chad for Gore and any combination of third-party candidates. That's nearly three times the 24,600 over-votes that included some discernible mark for George W. Bush and any combination of third-party candidates, according to a comprehensive examination of these ballots performed by The Palm Beach Post and seven other media organizations. The review suggests what many pundits said a year ago: *Uncounted ballots and voter confusion cost Gore the election.*
>
> In it autopsy of Florida's presidential balloting, the National Opinion Research Center identified *113,820 over-votes*. A Palm Beach Post analysis of NORC's detailed descriptions of these ballots found that the voters' intent cannot be discerned in 97 percent of them.
>
> ***But the NORC data do show that 2,194 ballots identified as over-votes by county election officials clearly exhibit a voter preference for Gore, while 1,307 show the voter intended to vote for Bush.***
>
> ***Had these over-votes been hand-counted and properly recorded as valid votes, Gore would have enjoyed a net increase of 887 votes - or 350 more than the 537-vote margin that ultimately gave Bush the presidency.*** (emphasis added)

1-24

52.   Since the State of Florida also has mandatory statutes for disqualification of Presidential Electors after a judicial determination pursuant to Section 103.131(7), and provisions for the ouster of wrongfully seated candidates pursuant to Section 102.1682(1),(2), a Judgment of Ouster and voiding of the 2000 Presidential election of Florida, must be issued, and GORE and LIEBERMAN, must be commissioned to office, pursuant to 3 U.S.C. Section 19, the Twentieth Amendment to the United States Constitution, and Article II of the United States Constitution, as well as, Florida Election Code, Section 102.1682(1),(2), which reads as follows:

(1)   *If the contestant is found to be entitled to the office*, if on the findings a judgment to that effect is entered, and if the adverse party has been commissioned or has entered upon the duties thereof or is holding the office, *then a judgment of ouster* shall be entered against such party. Upon presentation of a certified copy of the judgment of ouster to the Governor, the Governor shall revoke such commission and commission the person found in the judgment to be entitled to the office.

(2)   If a judgment is entered setting aside a referendum, *the election shall be void*. (emphasis added)

**B**

**DISQUALIFICATION OF TEXAS ELECTORAL VOTES**

53.   For the sole purpose of defeating Article II provisions of the United States Constitution with respect to the residency requirements, CHENEY who was allegedly hired by BUSH to "search for a Vice Presidential running mate", who picked his own self for a running mate for BUSH for the 2000 Presidential election, and who allegedly voted only twice in 18 years, allegedly moved to Wyoming in July 2000, managed to register there and vote there in "two elections" in less than an year, though he was qualified to vote only for a Presidential Elector in the year 2000, and for none other, pursuant to Wyoming State Constitution, Title 97, Section 97-6-002, which reads:

**97-6-002. Qualifications of electors.**

Every citizen of the United States of the age of twenty-one years and upwards, *who has resided in the state or territory one year* and in the county wherein such residence is located sixty days next preceding any election, *shall be entitled to vote at such election*, except as herein otherwise provided. (emphasis added)

25

**1-25**

54. CHENEY allegedly continued to reside in Texas though registered to vote in Wyoming as a resident of Wyoming, and allegedly was in Texas on November 7th, 2000, after returning from Wyoming after voting there in the 2000 Presidential election, allegedly watching the Presidential election results from his Texas home.

55. CHENEY was not an inhabitant of the State of Wyoming on December 18th, 2000, since he did not meet the Wyoming State Citizenship requirements of a mandatory residency of one year; therefore, was not eligible for Vice Presidency pursuant to the Wyoming State Constitution, Title 97, Section 97-6-015, which reads:

**97-6-015. Qualifications for office.**

*No person except **a qualified elector** shall be elected or appointed to any civil or military office in the state.* "Military office" shall be limited to the offices of adjutant general, assistant adjutant general for the army national guard and assistant adjutant general for the air national guard. (emphasis added)

56. Since CHENEY did not meet the mandatory residency requirements of one year residency in the State of Wyoming to be eligible to be a Wyoming State Citizen, nor to hold any Public office in Wyoming, at the time that he ran for the Vice Presidency, pursuant to Title 97 of the Wyoming Constitution, Sections 97-6-015 and 97-6-002, CHENEY was disqualified to receive any Vice Presidential Electoral votes of any State in the 2000 Vice Presidential election, since he was not a Citizen of any State on December 18th, 2000, but was a Federal Citizen without a State Citizenship. Had CHENEY continued to reside in Texas instead of moving to Wyoming in the eleventh hour, probably just the Texas Electoral votes for CHENEY would have been disqualified and CHENEY probably would have been eligible for the Electoral votes of the rest of the States. Thus, with that eleventh hour move to Wyoming just to get around Article II requirements, CHENEY disqualified himself from receiving any Electoral votes of any State's Electors in the 2000 Vice Presidential election!

57. Pursuant to Article II of the United States Constitution, on December 18th, 2000, BUSH and CHENEY must have been "inhabitants of two different States" to be eligible for the Presidency and Vice Presidency, respectively. Each of the 32 Texas

1 - 26

1 │ Presidential Electors, by voting for the Presidential and Vice Presidential candidates

2 │ in violation of Article II of the United States Constitution, i.e., by voting for CHENEY

3 │ who did not have the required State Citizenship, and by voting for BUSH, the only

4 │ qualified Republican Party candidate, who was also an inhabitant of the same State as

5 │ they were, i.e., Texas, disqualified themselves to hold office as Presidential Electors,

6 │ pursuant to Section 3 of the Fourteenth Amendment to the United States Constitution,

7 │ thereby reducing the total number of qualified Presidential Electors in the year 2000,

8 │ to 481. As the 32 Texas Electoral votes cast for BUSH and CHENEY were invalid

9 │ and of no effect, BUSH's total Electoral votes were 214 and CHENEY's Electoral

10 │ votes were -0- on December 18th, 2000, and on January 20th, 2001, while the Electoral

11 │ votes for GORE and LIEBERMAN were 266, each, on those same days, thus

12 │ qualifying GORE and LIEBERMAN for the Presidency and Vice Presidency,

13 │ respectively, of the United States, in the 2000 Presidential election.

14 │ **IV**

15 │ **ONGOING CONSTITUTIONAL VIOLATIONS BY THE DEFENDANTS**

16 │ 58. Once sworn into office on January 20th, 2001, within minutes, BUSH,

17 │ CHENEY and their administration, started indulging in activities that violate the

18 │ clearly established Federal law, starting with issuance of BUSH's Executive Orders to

19 │ reverse former President Clinton's Executive Orders; conspiring with BUSH and

20 │ CHENEY's corporate donors to charge our State of California and our neighboring

21 │ States with outrageous electricity prices that were allegedly increased up to 400%;

22 │ refusing to reveal the names of participants of those secret "closed-door" "Energy Task

23 │ Force" meetings that CHENEY and BUSH had with representatives from the energy

24 │ companies without a single Reporter being present; being rather rude to Reporters,

25 │ including a lady Reporter, when she asked CHENEY for the details of the "Energy

26 │ Task Force" meetings that they had with the energy companies; periodically

27 │ intimidating the Reporters, not to mention, telling them what to report; not offering any

28 │ Federal aid to the Upper Mississippi Valley States, though they only sought a few

**1-27**

1  million dollars in flood relief, while granting half a billion dollars in flood relief to

2  Texas and its neighboring States that gave BUSH and CHENEY their Electoral votes,

3  thus constantly discriminating against those Citizens from those States that voted for

4  GORE, in violation of the equal protection clause; suppressing the investigation of

5  September 11th, 2001 attacks on New York City and Pentagon; suppressing

6  investigations into the actions of BUSH and CHENEY, and their Corporate donors in

7  the Corporate fraud cases of Enron, Harken, and Halliburton; issuing Executive Order

8  for Military Tribunals for the prosecution of NonCitizens; and violation of Citizens'

9  Civil Rights, among others.

10     59. BUSH also obtained through <u>coercion</u> by labelling those who disagreed with

11  the BUSH Administration, as "unpatriotic", an <u>unconstitutional</u> resolution from

12  Congress that authorized BUSH to declare war against Iraq, though the Framers of the

13  Constitution gave Congress and only Congress, such a "power to declare war", which

14  is not a transferrable power, which makes that Iraq resolution authorizing BUSH to

15  declare war against Iraq, <u>void</u> on its face.

16     60. This Nation is not an Absolute Monarchy. However, BUSH has been

17  moving with lightning speed to wage war against Iraq, in an effort which he described

18  as "to avenge his father"! BUSH's actions fall under those described by the framers

19  as those of "absolute monarchs'", as mentioned in Federalist Papers, No. 4, by John

20  Jay, and need the people's attention:

21     It is too true, however disgraceful it may be to human nature, that nations
       in general will make war whenever they have a prospect of getting
22     anything by it; nay, *absolute monarchs will often make war when their
       nations are to get nothing by it, but for the purposes and objects merely
23     personal, such as* thirst for military glory, *revenge for personal affronts,
       ambition, or private compacts to aggrandize or support their particular
24     families or partisans.* These and a variety of other motives, which affect
       only the mind of the sovereign, *often lead him to engage in wars not
25     sanctified by justice or the voice and interests of his people.* But,
       independent of *these inducements to war, which are more prevalent in
26     absolute monarchies, but which well deserve our attention*, there are
       others which affect nations as often as kings; and some of them will on
27     examination be found to grow out of our relative situation and
       circumstances. (emphasis added)
28

                                    28                       1 - 28

61. Though the "Letter of Transmittal" of the Civil Rights Commission's Report regarding the Voting Irregularities in Florida, was addressed to "The President, The President of the Senate, and The speaker of the House of Representatives", thus far, no action has been taken by any of them, for obvious reasons. Attorney General, defendant JOHN ASHCROFT, pursuant to 42 U.S.C. Section 1973, et. seq., was required to declare the Florida 2000 Presidential election as void, or order recounts, or seek a new election in Florida; however, no action was taken thus far either by him, or by any of the Florida State Election officials, for obvious reasons.

62. On January 19th, 2002, a Complaint by me regarding these same issues and invoking the Original Jurisdiction of the United States Supreme Court, along with a Petition to all three branches of the Federal Government to declare and seat GORE and LIBERMAN as the 43rd President and Vice President, respectively, of the United States, was served and mailed to all the three branches of the Federal Government; however, none of the three branches of Government acted on my Petition; the Clerk of the House of Representatives and the Clerk of the USSC, did not accept the Petition and Complaint, respectively, for filing.

V

## DISQUALIFICATION TO HOLD ANY PUBLIC OFFICE

63. The individual defendants, by committing the illegal acts described above, violated the United States Constitution, and their Federal Constitutional Oath. Their illegal actions to seat the wrong persons in office, who were not democratically-elected, but were selected by each of the other defendants, denied not just the Florida Democrats, but the rest of the Democrats in the rest of the States of this Union, their fundamental right to vote, in violation of the equal protection clause. As explained above, each of the individual defendants conspired to defraud the United States, and each of the Governmental defendants abused his/her power to steal the Presidency for BUSH, and to have him seated as the President, in violation of the United States Constitution.

1-29

1    64. As mentioned above, BUSH and CHENEY were required to step down

2    pursuant to their Constitutional Oath of office, and declare GORE and LIEBERMAN

3    as the President and Vice President, respectively; however, they failed to do so;

4    therefore, are deemed to have waged a war on the Constitution, as well!

5    65. With respect to the USSC defendants, the Honorable Justice STEVENS

6    wrote as follows, in the case of ***Bush v. Gore, 121 S.Ct. 525, 542 (2000)***: "Although

7    we may never know with complete certainty the identity of the winner of this year's

8    Presidential election, ***the identity of the loser is perfectly clear. It is the Nation's***

9    ***confidence in the judge as an impartial guardian of the rule of law.*** (emphasis

10   added)" In the case of ***McCullough v. Commission on Judicial Performance, 49***

11   ***Cal. 3d. 186, 191 (1989)***, the California Supreme Court made a similar statement <u>to</u>

12   <u>justify the removal of a judge</u>, as follows: "...prejudicial conduct occurs when a

13   judge...engages in conduct ***which adversely affects public opinion of the***

14   ***judiciary...which justifies removal***....(emphasis added)" Therefore, pursuant to

15   Section 3 of the Fourteenth Amendment to the United States Constitution, each of the

16   USSC defendants has automatically disqualified self from holding office, based on that

17   "judicial declaration" by the Honorable Justice STEVENS; therefore, each of the

18   USSC defendants is bound by their Constitutional Oath of office, to voluntarily resign

19   from office that they are currently holding.

20   66. The actions of the nonGovernmental defendants fall under "color of law"

21   for conspiring with the Governmental defendants to have them abuse their power [see

22   ***Dennis v. Sparks, 449 U.S. 24, 27-28 (1980)*** - held private persons, jointly engaged

23   with state officials in the challenged action, are acting "under color of law" for

24   purposes of 1983 actions], and each of them would be ineligible to hold any public

25   office, either civil or military, in the future.

26   67. As mentioned above, once seated in office, the BUSH administration has

27   been indulging in activities that violate the United States Constitution and violate the

28   fundamental rights of the Citizens of the United States, and those illegal activities have

30

**1-30**

1   been <u>ongoing</u>. Once I conduct discovery and find out more about the actions of the
2   defendants, I will submit the necessary supplemental Complaints to this Complaint.
3   Each of those defendants has violated his/her Constitutional Oath of office as
4   explained above, and has automatically disqualified self from holding any public
5   office.

6       68.   Each of the defendants' actions during the 2000 Presidential election, also
7   fall under 42 U.S.C. Sections 1983, 1985 and 1986, and each of them is subject to 18
8   U.S.C. Sections 371-372, 594, 2381, 2383, and 2384, among others [see ***Ex Parte***
9   ***Yarbrough, 110 U.S. 651, 663-667 (1884)*** - the Court upheld the indictments saying
10  that in a representative Government like ours, the temptations to control these elections
11  by violence and by corruption is a constant source of danger; ***United States v. Mosley,***
12  ***238 U.S. 383, 386-388 (1915)*** - held intimidating voters violates 42 USC Section
13  1985; and ***Burroughs v. United States, 290 U.S. 534, 544 (1934)*** - held intent
14  unlawfully, or unlawfully and willfully, to evade performance of the statutory duty,
15  establishes conspiracy].

16      69.   Article II, Section 5(b) of the Florida Constitution also contains the
17  State/County Public Officers' Oath of office, "to support, protect, and defend the
18  Constitution and Government of the United States." Each of the Florida State/County
19  Election Officials involved in the Presidential election has violated his/her State
20  Constitutional Oath too, and abused his/her power as a State official, to defraud the
21  United States. Therefore, those Florida State and County Election officials should be
22  removed from office pursuant to Florida Election Code Sections 103.151 (removal of
23  State Executive Committee member) and 103.141 (removal of County Executive
24  Committee member), for violation of their State Oath of office that they took pursuant
25  to Article II, Section 5(b), of the Florida State Constitution, as well as, Section 3 of the
26  Fourteenth Amendment to the United States Constitution.

27

28

1-31

# VI

## GORE AND LIEBERMAN ARE ENTITLED TO POSSESSION OF OFFICE AND SHOULD BE COMMISSIONED TO OFFICE

70. As explained above, the Twentieth Amendment and 3 U.S.C. Section 19, provide for pro tem to take office only until the President-elect is "qualified". GORE and LIEBERMAN were qualified on December 18th, and on January 20th, 2001, with 266 legal Electoral votes each, while BUSH only had 214 Electoral votes, while CHENEY was not qualified for any Electoral votes at all; therefore, his Electoral votes were -0-. Since GORE and LIEBERMAN received the greatest number of Electoral votes, they both are entitled to office, but the wrong persons are in possession of the office of the President and Vice President, respectively. Pursuant to the Twentieth Amendment to the United States Constitution, and 3 U.S.C. Section 19, BUSH and CHENEY should comply with their Constitutional Oath of office, step aside and declare GORE and LIEBERMAN as the 43rd President and Vice President, respectively, of the United States. Since BUSH and CHENEY are not voluntarily resigning though petitioned for, and since the United States Congress did not make a declaration to that effect either, in the interests of justice, it would be appropriate for this Court to review this case and declare GORE and LIEBERMAN, as the 43rd President and Vice President, respectively, of the United States of America, and commission them to office immediately [see *Middleton v. Evers, 515 So. 2d 940 (Miss. 1987)* - the unsuccessful candidate was commissioned to office once the truth as to who won the election, was known].

71. The concerned Citizens do not have a plain, speedy, or adequate remedy at law, and unless the injunctive relief requested by this Complaint is granted, the Citizens of United States, who have all been suffering from BUSH and his Administration, will continue to suffer irreparable injury under the BUSH Administration by people who are not even democratically-elected, to begin with, and our servicemen and women will have to fight BUSH's "personal war" for him!

**1-32**

72. The USSC's final determination regarding the 2000 Presidential election was made on December 12th, 2000. The Electoral college cast their Electoral votes on December 18th, 2000. BUSH and CHENEY were inaugurated on January 20th, 2001. As stated above, a petition was submitted by me to all three branches of the Federal Government seeking the relief sought by this Complaint; however, no action was taken by any of the three branches of the Federal Government, and a total of three attempts were made by me to have my Complaint filed in the USSC; however, were all unsuccessful. I have standing to maintain this suit, as I am a woman of East Indian origin, and have standing to complain about the equal protection violations by the defendants against others that are similarly situated, and to complain about the unconstitutional Governmental actions and unconstitutional nonGovernmental actions under color of law. The time in which to bring this Complaint for possession of office is fixed by the Constitution and is four years, i.e., until the next Presidential election, pursuant to the Twentieth Amendment to the United States Constitution, and 3 U.S.C. Section 19.

Therefore, this Citizen's suit is proper, and is timely.

## RELIEF SOUGHT

I pray for the following relief against each of the defendants in this action for equitable injunctive and declaratory relief, to include:

1. Adjudge and declare that each of the individual defendants violated the clearly established Federal law; that each of the Governmental defendants violated his/her Constitutional Oath; and that each of the defendants has automatically disqualified self from holding any public office, either civil or military, pursuant to Section 3 of the Fourteenth Amendment to the United States Constitution;

2. Adjudge and declare that the Presidential and Vice Presidential Electoral votes of the States of Florida and Texas for the year 2000, are disqualified, are invalid and of no effect, for lack of compliance with the United States Constitution and the laws of the United States, and by application of the Apportionment Clause, Section 2

33

1-33

of the Fourteenth Amendment to the United States Constitution, and Article II of the United States Constitution; that defendants GEORGE W. BUSH, Jr., and RICHARD B. CHENEY did not meet the required qualifications to be seated as the President and Vice President, respectively; therefore, are ineligible to hold the office of the President and Vice President of the United States of America, respectively; and that they have no right to those offices and are in wrongful possession of those offices;

3. Adjudge and declare that the former Vice President, the Honorable ALBERT A. GORE, Jr., and Senator, the Honorable JOSEPH I. LIEBERMAN, met the required qualifications for the Presidency and Vice Presidency of the United States; that they are the democratically-elected 43rd President and Vice President, respectively, of the United States of America in the 2000 Presidential election, and are entitled to hold their respective offices for a fixed term per the United States Constitution, of not less than four years; and issue an order commissioning the former Vice President ALBERT A. GORE and Senator JOSEPH I. LIEBERMAN, to take immediate possession of their respective offices, for a Constitutionally-fixed term of not less than four years, to start from the day they are both sworn into office;

4. Issue an order setting aside and vacating all the Executive Orders and all other official actions taken thus far by defendants GEORGE W. BUSH, Jr. and RICHARD B. CHENEY as the President and Vice President, respectively, of the United States, as well as, all other official actions taken thus far by the others in their Administration, to include the actions of all their agents and successors in office, together with all persons acting in concert with them, as invalid and of no effect;

5. Issue an immediate temporary restraining order and an immediate preliminary injunction, followed by a permanent injunction, to restrain and prevent the defendants, their agents and successors in office, together with all persons acting in concert with them, from taking any action as the President and Vice President, respectively, of the United States of America, or as any other member of their Administration, or as any other Federal officer that defendant BUSH appointed, or from taking any other action

34

1-34

1  purported to be an official action of the President or Vice President of the United States
2  of America, or the actions of their agents and successors, in all other White House-
3  related offices; and

4      6. Grant such other and further relief as may appear equitable to this Court.

7                              Respectfully submitted,

9  Dated: October 31st, 2002

                                *Krishna Reddy*

11  ────────────────────────────
    Krishna Reddy
12  Plaintiff, in pro se

35

1 - 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION
## DECLARATION OF PLAINTIFF, KRISHNA REDDY

I, Krishna Reddy, am the plaintiff in the above-entitled action, ***REDDY vs. THE STATE OF FLORIDA, et. al.*** I have read the foregoing **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**, and know the contents thereof. With respect to the Complaint, the same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31st day of October, 2002, at Redlands, California.

By: _____

KRISHNA REDDY
Plaintiff-Declarant

1 - 36

Subj:     **You have received a George W. Bush Ecard from George W. Bush**
Date:     12/12/00 6:56:47 PM Eastern Standard Time
*From:*   ███████████@aol.com
*To:*     ███████@aol.com


█████████, you have received a eCard from George W. Bush at e-mail address█████████@aol.com.
To pick up your virtual postcard, go to the George W. Bush website at:
http://www.georgewbush.com/getpostcard.asp
Copy and paste the following postcard number: 75817286


———————— Headers ————————
Return-Path: <█████████@aol.com>
Received: from  rly-yc04.mx.aol.com (rly-yc04.mail.aol.com [172.18.149.36]) by air-yc02.mail.aol.com (v77.14)
with ESMTP; Tue, 12 Dec 2000 18:56:47 -0500
Received: from  georgewbush.com ([64.57..182.135]) by rly-yc04.mx.aol.com (v77.27) with ESMTP; Tue, 12 Dec
2000 18:56:42 -0500
Received: from mail pickup service by georgewbush.com with Microsoft SMTPSVC;
      Tue, 12 Dec 2000 17:57:03 -0600
From: <█████████@aol.com>
To: <█████████@aol.com>
Subject: You have received a George W. Bush Ecard from George W. Bush
Date: Tue, 12 Dec 2000 17:57:03 -0600
Message-ID: <02a001c06497$3996b030$0501a8c0@gwbweb.com>
MIME-Version: 1.0
Content-Type: text/plain;    charset="iso-8859-1"
Content-Transfer-Encoding: quoted-printable
X-Mailer: Microsoft CDO for Windows 2000
Thread-Index: AcBkizmWXnKQoDOpQnC9PTTo/czMbg==
Content-Class: urn:content-classes:message
X-MimeOLE: Produced By Microsoft MimeOLE V5.50.4133.2400
X-OriginalArrivalTime: 12 Dec 2000 23:57:03.0757 (UTC) FILETIME=[39B7F3D0:01C06497]


Exhibit:    A

Page No.:  37

**1-37**



Bush-Cheney 2000

News & Info

Issues

Get Involved

Contribute

Toolbox

Home

Dear ████████████,

Although you have supported that dweeb, Al Gore, I welcome you to join the good side. Have a nice day.

Sincerely,

George W. Bush

Paid for by Bush-Cheney 2000, Inc.    Privacy Policy | Contact Us

Exhibit:   A

Page No.: 38

1-38



FILED · EASTERN DIVISION
CLERK, US DISTRICT COURT

MAR - 6 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6 ___No___
JS-2/JS-3 ____
Scan Only ____

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

Krishna Reddy,                )        NO  EDCV 02-1187 RT (SGLx)
                              )
        Plaintiff,            )        ORDER 1) DENYING PLAINTIFF'S
                              )        CROSSMOTION FOR AN ORDER TO
        v                     )        STRIKE AND FOR ENTRY OF
                              )        JUDGMENT; 2) GRANTING
State of Florida, et al ,     )        FEDERAL DEFENDANTS' MOTION
                              )        TO DISMISS, AND 3) DISMISSING
        Defendants            )        THE COMPLAINT AS TO THE
──────────────────────────────        FEDERAL DEFENDANTS

   The court, Judge Robert J  Timlin, has read and considered defendants George W  Bush
Jr. ("Bush"), Richard B  Cheney ("Cheney"), John Ashcroft, Karl Rove, Andrew Card, Jr., Karen
Hughes, William Rehnquist, Sandra O'Connor, Antonin Scalia, Anthony Kennedy, and Clarence
Thomas (collectively "Federal Defendants")' motion to dismiss ("motion"), plaintiff Krishna
Reddy ("Plaintiff")'s Notice of Cross-Motion and Opposition to the Motion to Dismiss
Complaint with Prejudice by the Federal Defendants and Cross-Motion for an Order to Strike the
Insufficient Defenses of the Federal Defendants and For Entry of Judgment for the Plaintiffs, and
Federal Defendants' reply [1]  Based on such consideration, the court concludes as follows

───────────────────

[1] The court notes that it is considering Plaintiff's opposition and Federal Defendants' reply
despite the fact that they were not timely filed under Local Rule 7-9 and Local Rule 7-10

E-27 [1]
~~25-25~~

ENTER ON ICMS

MAR - 7 2003

56

2-39

MAR - 7 2003

1
2
3

# I.
# BACKGROUND

4    In December 2000, Bush and Cheney were named the winners of the 2000 Presidential
5    and Vice Presidential Election ("2000 election") despite failing to garner as many individual
6    votes as their opponents, Albert A. Gore ("Gore") and Joseph I. Lieberman ("Lieberman").
7    Plaintiff filed a complaint on October 31, 2002 alleging that Bush and Cheny did not meet the
8    mandatory qualifications to hold elected office and that the Federal Defendants conspired to
9    illegally prevent Gore and Lieberman from being declared the victors in the the 2000 election.
10   Federal Defendants now move for dismissal of Plaintiff's complaint based on lack of subject-
11   matter jurisdiction under Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)"), and failure to state a claim
12   upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6)

13
14

# II.
# ANALYSIS

15   **A.    Plaintiff's Crossmotion for an Order to Strike and for Entry of Judgment**
16            Plaintiff contends that the court should strike Federal Defendants' motion to dismiss and
17   enter judgment for her because Federal Defendants have made willful misrepresentations and
18   submitted false pleadings to the court. Federal Defendants' motion, however, merely recites the
19   allegations in the complaint, cites what Federal Defendants consider to be relevant law, and
20   makes arguments to the court based on the facts and law. Plaintiff provides no basis for this court
21   finding that Federal Defendants made false statements to the court. Therefore, the court will deny
22   Plaintiff's crossmotion for an order to strike and for entry of judgment

23
24   **B.    Legal Standard for a Motion to Dismiss for Lack of Subject Matter Jurisdiction**
25            A motion to dismiss pursuant to Rule 12(b)(1) raises the question of a federal court's
26   subject matter jurisdiction. In a Rule 12(b)(1) motion, the moving party contends that the court
27   has no authority or competence to hear and decide the case. Although the defendant is the
28

2

**2-40**

1   moving party on a motion to dismiss, the plaintiff bears the burden of establishing that

2   jurisdiction exists  Rio Properties, Inc v Rio Intern Interlink, 284 F 3d 1007, 1019 (9th Cir

3   2002)  The plaintiff need only make a prima facie showing of jurisdiction to defeat the

4   defendant's motion to dismiss  Id  In determining whether the plaintiff has met this burden,

5   uncontroverted allegations in the complaint must be taken as true, and conflicts of fact must be

6   resolved in the plaintiff's favor  AT&T v Compagnie Bruxelles Lambert, 94 F 3d 586, 588 (9th

7   Cir 1996).

8        Furthermore, a court must deferentially review a pro se complaint  "Pro se complaints are

9   held to a less strict standard than those drafted by a lawyer "  Bonner v Lewis, 857 F 2d 559, 563

10  (9th Cir 1988).  Before dismissing a pro se complaint, the court should indicate for the plaintiff

11  the deficiencies in the complaint  Eldridge v Block, 832 F 2d 1132, 1135-36 (9th Cir 1987)

12

13  **C.    Standing**

14       As stated in its February 19, 2003 order dismissing the complaint as to the defendant,

15  State of Texas, before addressing the merits of Plaintiff's action, the court must evaluate the

16  threshold jurisdictional question whether Plaintiff has standing to assert her claim  Friends of the

17  Earth, Inc v Laidlaw Envtl. Serv. (TOC), Inc , 528 U S. 167, 120 S Ct. 693, 703-04 (2000)

18  (stating that standing is a jurisdictional issue)  It is a "bedrock requirement" of constitutional

19  jurisprudence that federal jurisdiction is predicated on the existence of a "case" or "controversy."

20  Valley Forge Christian College v. Am United for Separation of Church and State, Inc , 454 U.S

21  464, 102 S.Ct 752, 758 (1982)  Standing is an essential element of Article III's case or

22  controversy requirement  In order to establish standing, a plaintiff must satisfy three elements

23  (1) plaintiff must have suffered an  "injury in fact", (2) there must be a causal connection between

24  the injury and the alleged wrongful conduct, and (3) there must be a likelihood that the injury

25  complained of will be redressed by the relief requested.  Lujan v. Defenders of Wildlife, 504 U S.

26  563, 112 S Ct 2130, 2136 (1992).

27       Regarding the first element of the Court's standing analysis, the "injury in fact" must be

28

3



1  concrete, rather than hypothetical or abstract. Id  A plaintiff "seeking relief that no more directly

2  and tangibly benefits him than it does the public at large" does not properly allege standing  Id. at

3  2143  The alleged injury upon which the claim is based must be particularized as to the plaintiff

4  Raines v. Byrd, 521 U S 819, 117 S Ct 2313, 2317 (1997)  Even where a plaintiff claims her

5  vote was diluted, she must allege that the defendant's actions have caused or will cause her a

6  concrete, personal injury  United States v Hays, 515 U S 740, 115 S Ct 2431, 2436 (1995)

7       Plaintiff contends that she has standing to bring suit against Federal Defendants' as a

8  naturalized citizen having taken the oath of allegiance to the United States.  Citizenship in the

9  United States, alone, does not confer standing to sue for constitutional violations occurring

10  nationwide.  Arizonans for Official English v Arizona, 520 U S  43, 117 S Ct. 1055, 1067

11  (1997)  Plaintiff a California state resident, who does not allege that she voted in the 2000

12  election, has not sufficiently alleged that she has suffered a concrete, personal injury from Federal

13  Defendants' wrongful actions  Because Plaintiff fails to allege a particularized "injury in fact,"

14  she lacks individual standing to bring suit against Federal Defendants

15       Plaintiff further asserts that Gore and Lieberman have standing, and that she has standing

16  as their assignee  In order for a plaintiff to possess third-party standing, (1) the plaintiff must

17  have suffered an "injury in fact" giving her a concrete interest in the case's outcome, (2) the

18  plaintiff must have a close relationship to the third party, and (3) the third party must be impaired

19  from protecting her own interests  Powers v Ohio, 499 U S  400, 111 S Ct 1364, 1370-71

20  (1991) (citing Singleton v Wulff, 428 U.S  106, 96 S Ct. 2868 (1976))  Here, Plaintiff has

21  demonstrated neither a valid "injury in fact," a close relationship with Gore and Lieberman, nor

22  that Gore and Lieberman are impaired from protecting their own interests.  Furthermore, there is

23  no evidence that Gore and Lieberman have assigned to Plaintiff any claim they might have

24  against Federal Defendants.  The court concludes that Plaintiff lacks both third-party and assignee

25  standing

26       Because amending the complaint cannot cure Plaintiff's inability to satisfy Article III's

27  standing requirement, the court will dismiss Plaintiff's complaint with prejudice as to the Federal

28

2 E- 142

1  Defendants
2
3
4                                    III.
                               DISPOSITION
5      ACCORDINGLY, IT IS ORDERED THAT.
6          1) Plaintiff's Cross-Motion for an Order to Strike the Insufficient Defenses of the Federal
7      Defendants and For Entry of Judgment for the Plaintiffs is DENIED,
8          2) Federal Defendants' motion to dismiss Plaintiff's complaint is GRANTED, and
9          3) Plaintiff's complaint is DISMISSED with prejudice as to Federal Defendants.
10
11
12  _____3/5/03_____          _Robert J Timlin_
13        DATE
                              ROBERT J  TIMLIN, DISTRICT COURT JUDGE
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
                                       5

                                                            2·43

Krishna Reddy
10650 Mountain View Ave. #702
Redlands, CA 92373-8459
(909) 799-9569
No FAX Number


Plaintiff, KRISHNA REDDY,
in pro se,


## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA


CASE NO.:   06-CV-2114-JDB


KRISHNA REDDY,                         )
      Plaintiff,                        )
                                       )
      vs.                               )
                                       )
SANDRA DAY O'CONNOR, et.al.,           )      CERTIFICATE OF SERVICE
      Defendants.                       )
                                       )
_____        )

## PROOF OF SERVICE BY U.S. MAIL

I, **FREDRIC SAUCEDO**, declare:

1.      I am a resident of the County of San Bernardino, the State of California. I am over the age of 18 years, and not a party to the cause. My business address is: 1900 W. Redlands Blvd, San Bernardino, CA 92403.

2.      On March 23, 2007, I served the following documents:

**(1)    OBJECTIONS TO HEARING OF ANY MATTER BY JUDGE; AND MOTION FOR DISQUALIFICATION OF THE HONORABLE JUDGE JOHN D. BATES;**

**(2)    EVIDENCE PACKAGE...;**

**(3)    PROPOSED ORDER;**

in the case of _Reddy v. Sandra Day O'Connor, et. al._, pending in the U.S. District Court for the District of Columbia, Civil Case No.: 06-CV-02114-JDB, on the defendants by placing true copies thereof enclosed in a sealed envelope with postage thereon fully prepaid for First Class Mail, and depositing that sealed envelope in the United States mail at San Bernardino, California, addressed as follows:

>       Ms. Andrea McBarnette
>       Assistant United States Attorney
>       555 Fourth Street, N.W.
>       Washington, DC. 20530
>       Phone: (202) 514-7153

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in this Proof of Service is true and correct.

Executed on March 23, 2007, in San Bernardino, California.

By: _____
       Declarant

Krishna Reddy
10650 Mountain View Ave, #702
Redlands, CA 92373-8459
(909) 799-9569
No FAX Number


Plaintiff, KRISHNA REDDY,
in pro se,


# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA


CASE NO.:   06-CV-2114-JDB


KRISHNA REDDY,                         )
                                       )
        Plaintiff,                     )
                                       )
        vs.                            )
                                       )
SANDRA DAY O'CONNOR, et.al.,           )        ORDER GRANTING PLAINTIFF'S
                                       )        MOTION FOR
        Defendants.                    )        DISQUALIFICATION OF THE
                                       )        THE HONORABLE JUDGE
                                       )        JOHN D. BATES
                                       )
———————————————————————                )


        The plaintiff KRISHNA REDDY's objections to the hearing of any matter

by Judge JOHN D. BATES and motion for disqualification of the Honorable Judge

JOHN D. BATES came on for hearing.  The Court having considered the

objections and the motion, and for good cause appearing,


1

IT IS ORDERED that the plaintiff's motion for disqualification of the Honorable Judge JOHN D. BATES is granted, and the case is ordered reassigned for all purposes to a different judge.

Date: _____, 2007

_____
United States District Court Judge