UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KRISHNA REDDY,

    Plaintiff,

    v.

SANDRA DAY O'CONNOR,
Associate Justice, United States Supreme
Court, et al.,

    Defendants.

Civil Action No. 06-2114 (JDB)

FILED

OCT 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

This matter is before the Court on the motion of the U.S. Supreme Court defendants to dismiss, plaintiff's cross-motion for summary judgment, and plaintiff's motion for disqualification of the undersigned.[1] Upon a careful review of the complaint, and construing the factual allegations in the light most favorable to plaintiff, the Court concludes that the doctrine of judicial immunity and a jurisdictional bar on the requested injunctive relief require dismissal of plaintiff's claims against the U.S. Supreme Court defendants. Because the remainder of the complaint has virtually no nexus to this judicial district and instead focuses on events and defendants in California, the Court will then transfer this case to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404.

---

[1] Plaintiff has submitted three memoranda in this case. For ease of reference, the Court will refer to plaintiff's memorandum in support of her motion for summary judgment and in opposition to defendants' motion as "Pl.'s Opening Mem.," and to her memorandum in support of her motion for disqualification as "Pl.'s Disqualification Mem." Her final reply brief will be sited as "Pl.'s Reply Mem."

## BACKGROUND

Plaintiff, proceeding *pro se*, filed a complaint on December 12, 2006, alleging violations of her federal civil rights and intentional and negligent infliction of emotional distress, seeking $100 trillion in damages and equitable and injunctive relief against over 200 defendants. The Court issued an Order on December 20, 2006, to address the fair and efficient management of this litigation, observing that plaintiff and most defendants reside in California, and that virtually all of the allegations describe events that occurred in California -- primarily, a series of lawsuits and appeals filed by plaintiff in state and federal courts regarding the termination of her employment at two California hospitals and her subsequent bankruptcy proceedings, as well as allegedly unlawful conduct by the attorneys, judges, and justices involved in those cases. See Order at 1-2 (filed Dec. 20, 2006) (citing Compl. ¶¶ 3-23). Indeed, of the more than 200 defendants, the only defendants in the District of Columbia are five justices of the U.S. Supreme Court and their staff ("U.S. Supreme Court defendants"),[2] the U.S. Department of Justice ("DOJ"), and the U.S. Department of Housing and Urban Development ("HUD"). Id. at 2.

Plaintiff's complaint invokes venue in this Court based on the alleged acts of the U.S. Supreme Court defendants. See Compl. ¶ 27 ("[V]enue is proper in this Court because the latest acts . . . were by the above-mentioned defendant Justices of the United States Supreme Court, their respective Law Clerks, and the Deputy Court Clerk . . . and occurred in Washington, District of Columbia."). Plaintiff alleges that she is entitled to relief against the Supreme Court defendants because they denied her petition for certiorari in one of her earlier cases based on

---

[2] The Supreme Court defendants are Chief Justice Roberts, Justice Scalia, Justice Thomas, Justice Kennedy, Justice O'Connor (retired), and their unnamed law clerks. The complaint also names the Supreme Court Deputy Clerk, Sandra Elliott, as a defendant.

partisan politics and denied her motion requesting an order to the deputy clerk to file documents. Compl. ¶ 40, 51, 52. Because judicial immunity and venue appear to be self-evident and substantial threshold issues affecting the viability of the action in this district, the Court in its December 20, 2006 Order directed that the case commence with a response on behalf of the U.S. Supreme Court defendants by the United States Attorney's Office for the District of Columbia.

The U.S. Supreme Court defendants then filed a motion to dismiss, asserting several grounds for dismissal, including judicial immunity and lack of jurisdiction over the requested injunctive relief. In response, plaintiff has moved for the disqualification of the undersigned, citing the appointment of the undersigned to the United States Foreign Intelligence Surveillance Court by defendant Chief Justice Roberts as grounds for questioning the Court's impartiality, and alleging actual bias based on the Order asking the U.S. Attorney's Office to address the preliminary issues of judicial immunity and venue.[3] Plaintiff further contends that, in any event, the U.S. Supreme Court defendants are not covered by judicial immunity and that she is thus entitled to summary judgment.

---

[3] Plaintiff also alleges that the undersigned cannot preside over plaintiff's case on the ground that President Bush lacks the authority to appoint Article III judges (including the undersigned) because of the dispute over the electoral results in the November 2000 elections. See Pl.'s Disqualification Mem. at 3-4. Specifically, plaintiff challenges the manner in which the votes were counted, a matter that has long since been resolved. See Bush v. Gore, 531 U.S. 98 (2000), on remand sub nom., Gore v. Harris, 773 So. 2d 524 (Fla. 2000). The Court finds no reason to revisit the resolution of those issues here. It also bears noting that plaintiff mounted substantially the same challenge to that election four years earlier in a separate suit, and her case was dismissed for lack of standing, a holding with which this Court agrees. See Reddy v. State of Florida, Civil Action No. EDCV 02-1187 RT (C.D. Cal.) Order at 2-4 (C.D. Cal. Mar. 6, 2003) (attachment to Pl.'s Disqualification Mem.).

I.      **Plaintiff's Motion for Disqualification**

Plaintiff moves to recuse the undersigned on the ground that my impartiality "might reasonably be questioned" under 28 U.S.C. § 455(a), and also alleges that the undersigned has demonstrated actual bias in this matter.[4] See Pl.'s Opening Mem. at 2; Pl.'s Disqualification Mem. at 4-8. The Court concludes that recusal is neither required nor warranted.

Plaintiff alleges two sources of bias. Plaintiff first alleges that, as a judge appointed by the Chief Justice to the Foreign Intelligence Surveillance Court ("FISC"), the undersigned has a "close personal relationship" with the Chief Justice resulting in a real or potential bias in his favor.[5] See Pl.'s Opening Mem. at 2; Pl.'s Disqualification Mem. at 4. An objective standard governs requests for recusal under section 455(a) -- that is, whether a reasonable and informed observer would question the judge's impartiality. See Liteky v. United States, 510 U.S. 540, 548 (1994); SEC v. Loving Spirit Found., 392 F.3d 486, 493 (D.C. Cir. 2004). The Court concludes that no reasonable and informed observer would question the impartiality of the undersigned

---

[4] Section 455 provides, in relevant part, that:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

   (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . . .

28 U.S.C. § 455(a) and (b)(1).

[5] Plaintiff incorrectly refers to the Chief Justice as the "employer" of the undersigned. The Court observes that federal judges are employees of the United States, not of the Chief Justice; further explication on this point is unnecessary.

based on the Chief Justice's appointment of the undersigned to the FISC. No personal or financial concerns of the undersigned are implicated by the appointment. See Microsoft Corp. v. United States, 530 U.S. 1301 (2000) (order by Chief Justice Rehnquist denying motion to recuse where his son's law firm represented a party but his personal and financial concerns were unaffected). Furthermore, the relationship that has followed from the appointment is a professional one, and such professional relationships generally are not grounds for recusal where official action is at issue. See In re Keenan, 372 B.R. 496, 501 (Bankr. S.D. Cal. 2007). Simply put, a reasonable person, well-informed about the appointment process, would not question the impartiality of an appointee in this setting.

Plaintiff also contends that the Court has demonstrated a bias against plaintiff by observing in the December 20, 2006 Order that there may be grounds for dismissal of the Supreme Court defendants, and later setting a schedule that allegedly gave plaintiff insufficient time to respond to the motion to dismiss. See Pl.'s Opening Mem. at 1-2; Pl.'s Disqualification Mem. at 5. Neither of those orders warrants recusal. As the Supreme Court observed in Liteky, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." 510 U.S. at 555. Judicial opinions formed by a judge on the basis of the record of the proceedings in a case will not warrant recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id.

As the Court explained in the 2006 Order, the issues of venue and judicial immunity were raised early in the case "to ensure the fair and efficient management of this litigation," which involved over 200 defendants, most located in California. Order at 1. The record accurately reflects this Court's concerns over case management, rather than any antagonism against plaintiff, or favoritism towards defendants.

The schedule the Court set for plaintiff's response to the motion to dismiss required a response by March 21, 2007, thus allowing plaintiff 14 days to respond, consistent with Local Civil Rule 7(b) and Federal Rule of Civil Procedure 6. See Order (filed Mar. 7, 2007). Plaintiff's filings suggest there was some delay in the mailing of the Order to plaintiff, resulting in her having less than a week to respond. See Pl.'s Opening Mem. at 5. However, the Court was unaware of that delay, and plaintiff surely was aware that she could have sought an enlargement of time, having already received two such motions from government counsel previously in this case. In any event, the Court can discern no prejudice to plaintiff, as she filed a timely response to the motion to dismiss and also filed two other subsequent briefs. In short, plaintiff's allegations do not provide a basis for questioning the impartiality of this Court or finding an actual or potential bias for or against any party; hence, the motion for disqualification will be denied.

## II.     Defendants' Motion to Dismiss

### A.     Standard of Review

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). Therefore, the factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the

complaint. Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- plaintiff here -- bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is mindful that all that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam). "A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). Thus, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp., 127 S. Ct. at 1965 (citations omitted).

B.  **Barriers to Relief Against the Supreme Court Defendants**

1.  **Judicial Immunity**

The U.S. Supreme Court defendants move to dismiss plaintiff's claims for money damages on several grounds, including judicial immunity. See Defs.' Mem. at 4-6. Plaintiff responds that defendants have failed to state a valid legal defense and seeks summary judgment on that basis. See Pl.'s Opening Mem. at 12.

Under the doctrine of judicial immunity, "[a] judge is absolutely immune from liability for his judicial acts." Stump v. Sparkman, 435 U.S. 349, 359 (1978); Sindram v. Suda, 986 F.2d 1459, 1460 (D.C. Cir. 1993) (per curiam). This immunity extends to court clerks who perform "tasks that are an integral part of the judicial process." Sindram, 986 F.2d at 1160-61. There are two exceptions to immunity: (1) "a judge is not immune from liability for nonjudicial actions"; and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11-12 (1991). "'[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'" Id. at 12 (quoting Stump, 435 U.S. at 362).

The Supreme Court actions at issue consist of the denial of a petition for a writ of certiorari filed by plaintiff in 1997, the deputy clerk's alleged refusal to file documents plaintiff submitted concerning another petition for writ of certiorari in 2005, and the Supreme Court's subsequent order denying a motion for an order directing the deputy clerk to file the documents. Compl. ¶¶ 40, 51, 52. All of those actions are quintessentially "judicial" in nature because they are "an integral part of the judicial process." See Sindram, 986 F.2d at 1160-61. The deputy clerk's receipt and processing of plaintiff's attempted filings are part and parcel of the process of

adjudicating cases. Moreover, the decisions by the justices on motions and petitions for certiorari are "paradigmatic judicial acts . . . resolving disputes between parties who have invoked the jurisdiction of a court." Forrester v. White, 484 U.S. 219, 227-30 (1988) (contrasting judicial resolution of disputes between parties with a judge's "administrative" decision to fire a court employee).

Plaintiff attempts to overcome judicial immunity by arguing that those actions are "administrative," rather than judicial, citing Forrester, 484 U.S. at 229-30, and Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993). Those cases contain not even the barest suggestion that the rejection of plaintiff's papers for docketing or the denial of her petition for certiorari should be characterized as "administrative," rather than judicial. Forrester held that the firing of a probation officer could not be considered a "judicial" act because hiring and firing decisions by a judge are not meaningfully distinguishable from employment decisions made by non-judicial employers and, indeed, involve no "adjudication" pertaining to a case. 484 U.S. at 229. Antoine has even less relevance, holding that court reporters do not have judicial immunity for failure to produce a transcript of a trial because the duty of transcribing proceedings verbatim is an "administrative" task. 508 U.S. at 434-36. Neither case suggests that the actions of the U.S. Supreme Court defendants pertaining to her petition for certiorari are "administrative," rather than judicial. On the contrary, they confirm that immunity covers the very type of grievance at issue here -- a disappointed litigant frustrated by an adverse decision in her underlying case. See Forrester, 484 U.S. at 226-27 (explaining that "the nature of the adjudicative function requires a judge frequently to disappoint" the desires of litigants and thus judicial immunity is necessary to address those situations); Antoine, 508 U.S. at 435-46 (emphasizing that "the 'touchstone' for the doctrine's applicability has been 'performance of the function of resolving disputes between

parties, or of authoritatively adjudicating private rights'"). As this Circuit held in Moore v. Burger, the justices "have absolute immunity in exercising their judicial authority" in deciding the matters pending before them. 655 F.2d 1265, 1266 (D.C. Cir. 1981) (per curiam); accord Sibley v. Breyer, 456 F. Supp. 2d 43, 35 (D.D.C. 2006) (holding that judicial immunity required dismissal of plaintiff's claims challenging denial of petition for writ of certiorari).

Plaintiff next argues that judicial immunity should not apply because the justices denied her petition for writ of certiorari in the complete absence of all jurisdiction. Pl.'s Opening Mem. at 6. Plaintiff's contention is based on the premise that, because she named the justices as parties to the petition, they were necessarily disqualified and thus lacked jurisdiction to act. Id. This is nonsense. To begin with, it is not at all clear that the recusal statute required disqualification under the circumstances alleged by plaintiff. See Defs.' Mem. at 2-3. Although it is true that section 455(b)(5) requires recusal where a justice is "a party to the proceeding," it has also been recognized that recusal is not required where the claim asserted is "wholly frivolous" or a litigant has named a judicial officer as a defendant to force him out of the case and hence obtain assignment of a judge the litigant considers more desirable. See Snegirev v. Sedwick, 407 F. Supp. 2d 1093, 1095-96 (D. Alaska 2006). Plaintiff appears to be employing such tactics. Indeed, plaintiff has in this very case asserted that she objects to the assignment of her case to any judge or justice appointed by President Bush. See Pl.'s Disqualification Mem. at 5.

But assuming arguendo that plaintiff has a colorable claim that recusal of the justices was required, this had no effect on the jurisdiction of the justices to act on her petition for certiorari, and thus the exception to judicial immunity for acting in "the complete absence of all jurisdiction" is inapplicable. Nothing on the face of section 455 purports to affect the subject matter jurisdiction of a court. Moreover, the Supreme Court has implicitly confirmed this in

explaining that section 455 does not itself create a remedy, and thus violations must be handled on a case-by-case basis, with any remedy coming in the form of relief from judgment under Fed. R. Civ. P. 60, if justice so requires. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 862-63 (1988) ("Although § 455 defines the circumstance that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty. Congress has wisely delegated to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation.").[6] At best -- and a far stretch at that -- plaintiff is challenging the propriety of the justices' failure to recuse; once again, that is just the type of challenge to a judicial decision that immunity is meant to cover.

Neither of the exceptions to absolute judicial immunity, then, applies to plaintiff's claim for damages against the Supreme Court defendants; hence, the Court will grant the motion to dismiss those claims.

### 2.     Absence of Jurisdiction over Injunctive Relief Request

Plaintiff also requests the issuance of an injunction against all judicial defendants, including the Supreme Court defendants, preventing them from "adjudicating rights without due process of law," granting her "a reasonable opportunity to be heard," and declaring that their actions violated the U.S. Constitution. Compl. at 33. The Court can quickly dispatch with this request for, although judicial immunity does not apply to requests for injunctive relief (see

---

[6] The Supreme Court further explained that, rather than turning on an absence of jurisdiction, the appropriateness of vacating a judgment under Rule 60(b) for a violation of section 455 turns on considerations of justice, including "the risk of injustice to the parties in the particular case, the risk that denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." Liljeberg, 486 U.S. at 864.

Pulliam v. Allen, 466 U.S. 522, 541-42 (1984)), the Court plainly lacks jurisdiction to compel official action by the U.S. Supreme Court justices or their staff.

This Circuit has held that the lower federal courts have no authority to compel the Clerk of the Supreme Court to take any action because "supervisory responsibility" over the Clerk is "exclusive to the Supreme Court." In re Marin, 956 F.2d 339, 340 (D.C. Cir. 1992). This holding applies no less to the deputy clerk and the law clerks, based on the same principle of the Supreme Court's exclusive supervisory responsibility over its staff. See id.; see also Griffin v. Higgins, No. 99-1576, 1999 WL 1029177, at *1 (D.D.C. June 18, 1999) (noting that "[t]his Court lacks subject matter jurisdiction to review any decision of the Supreme Court or its Clerk[,]" and thus dismissing claim against Supreme Court deputy clerk for refusal to file plaintiff's papers), aff'd sub nom., Griffin v. Apfel, 203 F.3d 52 (D.C. Cir. 1999). Even less needs to be said to explain that a lower federal court does have the authority to compel the justices of the Supreme Court to take any action. In re Marin, 956 F.2d at 340 ("'[I]t seems axiomatic that a lower court may not order the judges or officers of a higher court to take an action.'") (quoting Panko v. Rodak, 606 F.2d 168, 171 n.6 (7th Cir. 1979)); accord Steele v. Supreme Court of United States, 235 Fed. Appx. 1 (D.C. Cir. 2007) (same); In re Lewis, No. 99-5015, 1999 WL 150347, at *1 (D.C. Cir. 1999) ("It is axiomatic that this Court may not review orders of the Supreme Court or order it to take any action."). Accordingly, plaintiff's request for injunctive relief against the Supreme Court defendants will be dismissed.

## III.   Venue

Plaintiff has alleged that venue lies in the District of Columbia based on the actions of the U.S. Supreme Court defendants. Compl. ¶ 27. The government has suggested that venue would

be most appropriate in California where the bulk of the events at issue and most of the roughly 200 defendants, and plaintiff, are located. See Defs.' Mem. at 11 n.5. Indeed, the Court observed in its initial order that a transfer of venue would likely be appropriate if the U.S. Supreme Court defendants were dismissed, based on these same considerations. See Order at 2-3 (filed Dec. 20, 2006).

The general venue statute provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Here, virtually all of the remaining named parties are located in California. These include plaintiff, judges of the federal and state courts sitting there, the State of California and several of its agencies, the City and County of San Bernardino, and plaintiff's former employers in the San Bernardino area -- the Redlands Community Hospital and its employees, and the Loma Linda Community Hospital and its employees. See Compl. ¶¶ 4-23. These parties appear to be the relevant witnesses as well. The allegations against DOJ and HUD -- the only other defendants in the District of Columbia -- are, in comparison, a de minimis component of this action. See id. ¶¶ 48-49. Plainly, then, venue is appropriate in California, and in particular, in the Central District of California.[7]

Plaintiff objects to the transfer of her case to California because of the adverse decisions she has thus far received in those courts, including an order that limits her ability to file suit without leave of court. See Pl.'s Reply Mem. at 2. The possibility of an unfavorable disposition, however, is not a factor in the venue analysis, and in any event, is far outweighed by the

---

[7] Plaintiff resides in Redland, California, located in the San Bernardino area, and the many defendants, including her two former employers, judges of the Central District of California, and the City and County of San Bernardino, are located there as well.

inconvenience to the remaining defendants and witnesses that would be caused by litigating this case in a district with virtually no nexus to the complaint. Therefore, pursuant to 28 U.S.C. § 1404, the Court concludes that it is in the interests of justice to transfer this action to the Central District of California for the convenience of the parties and witnesses and also considering the close nexus between the events alleged and that district.[8]

## CONCLUSION

For the foregoing reasons, the Court will grant the motion of the U.S. Supreme Court defendants to dismiss and will transfer this action to the Central District of California. Plaintiff's motion for disqualification and her separate motion for summary judgment will be denied. A separate order accompanies this memorandum opinion.

/s/ John Bates
JOHN D. BATES
United States District Judge

Dated: October 24, 2007

---

[8] Transfer of venue arguably is required under 28 U.S.C. § 1406(a) as well, which provides for transfer where a case is filed in the wrong district. That appears to be the situation here, notwithstanding the cursory references to DOJ and HUD in the complaint. None of those references indicate that any actions taken by DOJ or HUD occurred in the District of Columbia. See Compl. ¶¶ 48-49. Hence, once the Supreme Court defendants have been dismissed, there would appear to be no basis for venue in the District of Columbia.